Commonwealth *v.* DeVaughn, Appellant.

Argued April 11, 1972. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and PACKEL, JJ.

*Stanton D. Levenson*, with him *Watzman, Levenson & Snyder*, for appellant.

*Robert L. Eberhardt*, Assistant District Attorney, with him *Carol Mary Los*, Assistant District Attorney, and *Robert W. Duggan*, District Attorney, for Commonwealth, appellee.

OPINION BY HOFFMAN, J., June 16, 1972:

This is an appeal from appellant's conviction for armed robbery. Appellant contends that he was previously acquitted of this offense, and that he therefore was twice placed in jeopardy for the same offense.

Appellant was initially indicted at Nos. 96 and 97 November Sessions, 1968, upon charges of murder, voluntary manslaughter, and involuntary manslaughter. Appellant was then indicted at No. 55 December Sessions, 1968, upon the charge of armed robbery. The above charges were lodged against appellant and two co-defendants as the result of the shooting death of a grocery store owner in the course of an armed robbery. The trials of the defendants were severed.

In April 1969, appellant went to trial on the felonious homicide charges before the Honorable Samuel STRAUSS and a jury. Judge STRAUSS properly instructed the jury regarding the law of felony murder. The jury thereafter returned a verdict of acquittal. Following appellant's acquittal, appellant made an application to quash the indictment for armed robbery on the basis that a second prosecution was barred by the Fifth Amendment to the United States Constitution. This application was denied.

Just prior to appellant's trial on the charge of armed robbery, appellant's attorney filed a Special Plea in Bar which again raised appellant's double jeopardy claim. This Special Plea in Bar was denied, and appellant proceeded to trial before the Honorable Ralph H. SMITH, Jr., and a jury. The jury found appellant guilty of the armed robbery.

Post-trial motions were filed and argued on December 1, 1970, before a court en banc, consisting of Judges SMITH, STRAUSS, and Judge Richard E. MCCORMICK. On October 4, 1971, Judge SMITH filed an opinion denying the motions. Judge McCORMICK concurred in this opinion. Judge STRAUSS thereafter filed a dissenting opinion in which he expressed his view that appellant's motion in arrest of judgment should have been granted on the basis of appellant's claim of double jeopardy. On January 5, 1972, appellant was sentenced to undergo imprisonment for a term not less than ten nor more than twenty years. This appeal followed.

The federal constitutional guarantee against double jeopardy has been made applicable to the states through the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784 (1969). The question for determination here is whether the Commonwealth violated that guarantee by prosecuting appellant for armed robbery after he had been acquitted of the homicide charge arising out of the same incident.

In *Ashe v. Swenson*, 397 U.S. 436 (1970), the United States Supreme Court declared that the doctrine of collateral estoppel is embodied in the Fifth Amendment guarantee against double jeopardy. The Court stated in *Ashe v. Swenson*, supra at 443, that the phrase "collateral estoppel" "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit."

It is, of course, difficult to determine which issues of ultimate fact have been foreclosed by a former criminal proceeding. In *Ashe v. Swenson*, supra, at 443-44, Mr. Justice STEWART, speaking for the Court, indicated how the rule of collateral estoppel should be applied: "The federal decisions have made clear that the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality. Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.' [footnote omitted]. The inquiry 'must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.' Sealfon v. United States, 332 U.S. 575, 579, 68 S. Ct. 237, 240. Any test more technically restrictive would, of course, simply amount to a rejection of the rule of collateral estoppel in criminal proceedings, at least in every case where the first judgment was based upon a general verdict of acquittal. [footnote omitted]."

With the above test in mind, we must then determine whether the jury in appellant's trial for felonious

homicide could have rationally grounded its verdict of acquittal on any other issue than appellant's nonparticipation in the robbery. The Commonwealth's evidence at trial was that two young boys went into the decedent's grocery store and asked for a nickel's worth of candy. They then refused to pay for the candy, and two shots were fired. Both bullets entered the decedent's body, one of which caused his death. The bullets were fired from the same weapon, and the evidence established that one Russell Sewell had done the shooting. Immediately after the above events, the cash register was discovered to be open, with small change scattered on the floor and counter. The Commonwealth introduced into evidence appellant's written confession that he and Russell Sewell went to the store for the common purpose and with the intent of robbing the store owner. The Commonwealth had thus established a classic case of felony murder.

Appellant took the stand after the Commonwealth rested and testified that he signed the confession only after being punched and kicked by several police officers. The appellant additionally denied being informed of his constitutional rights before he gave the police a statement. In his testimony concerning the events which caused the death of the grocery store owner, appellant maintained that although he accompanied Sewell to the store on the day of the robbery, he was unaware of Sewell's intent to rob the store owner or Sewell's possession of a gun. Appellant stated that he went to the store to get some potato chips and pies, and that after hearing the first shot, he ran out of the store.

Judge STRAUSS instructed the jury on the law of felony murder as follows:

"Now, the definition of murder is further clarified for our purposes by our statutes. The Legislature in

Pennsylvania has defined murder in what is known as our Criminal Code, in part, in the following language, and note as I read the language that there are a number of situations where the language is in the conjunctive. The word 'or' exists between certain types of first degree murder. All murder which shall be perpetrated by means of poison or lying in wait is one type; or by any other kind of willful, deliberate, and premeditated killing, and that is a second type of murder in the first degree; or, which shall be committed in the perpetration of or attempt to perpetrate any arson, rape, robbery, burglary, or kidnapping shall be deemed murder in the first degree.

"That is, any one of these combinations that we have just read to you, members of the jury, and you need not find all of these things existing, but if you find any of these existing that we have just defined.

. . .

"In this case, members of the jury, the Commonwealth contends that the killing was murder in the first degree, and in support thereof offers evidence for your determination of whether or not there was a killing in the perpetration of, or the attempt to perpetrate a robbery. The law in Pennsylvania provides in part as follows: whoever robs another or steals from the person of another, or who assaults any person with intent to rob him, or by menace or force demands any property of another, with the intent to steal the same is guilty of the crime of robbery. That is defined so that you will better understand the previous statute that we have read to you.

"Now, members of the jury, in this case the Commonwealth contends that [the grocery store owner] met his death at the hands of the [defendants Russell Sewell, Roger DeVaughn, and one Homer Denison], in an attempt to commit the crime of robbery. Such

evidence could properly support a verdict based upon a determination that the death resulted from an attempt to commit a robbery. Under The Penal Code when death results from an attempt to commit a robbery, there need not be shown any intent, actual or presumed, to kill. The killing may be entirely unintentional, or even accidental. Such a defendant is, nevertheless, guilty of murder in the first degree.

"Now, if you are satisfied that the Commonwealth has shown that the murder was committed in the perpetration of, or an attempt to perpetrate a robbery, it is not necessary for the Commonwealth to go further and show the other elements constituting [a different kind of] murder in the first degree.

. . .

". . . You are to consider that provision of the act which makes it murder in the first degree to kill another in the perpetration of or the attempt to perpetrate a robbery.

"Now, it is the law that where one is killed by another in the perpetration of or attempting to perpetrate a robbery, the killing is murder in the first degree even though there is no intent to kill, no deliberation or premeditation of the killing. If it was incident to or done in the course of the perpetration or the attempting to perpetrate that felony.

"If it is your conclusion that the killing resulted from an attempt to perpetrate or in the perpetration of a robbery, you may terminate that part of your consideration of this question of the degree of guilt because such finding as a fact by you would constitute murder in the first degree. If you conclude that the killing was not in the perpetration or attempt to perpetrate a robbery, you must then decide whether or not the killing was willful, deliberate, and premeditated killing. [Judge STRAUSS then defined that type of homicide.]"

Assuming a rational jury, this Court is drawn to the inescapable conclusion that the jury, by its verdict of acquittal, found the appellant was not a participant in the robbery. If the jury had concluded that appellant was a participant in the robbery, it would then rationally, and pursuant to the court's instructions, have had no choice but to convict him.

The Commonwealth argues that the jury could have found appellant guilty of the armed robbery but not have been convinced beyond a reasonable doubt that there was an unlawful killing as a result thereof. This argument is based upon appellant's stipulation to the pathologist's report that the decedent's death was caused by the bullet wounds inflicted by Russell Sewell. The pathologist testified that the bullet wounds were the cause of death to a "reasonable degree of medical certainty." The Commonwealth contends that the jury could have had a reasonable doubt concerning the cause of decedent's death, even though there was no evidence that anything but the gunshot wounds were the cause of death.

This argument cannot be sustained without implicitly rejecting the rule of collateral estoppel in criminal proceedings, "at least in every case where the first judgment was based upon a general verdict of acquittal." *Ashe v. Swenson,* supra at 444. In appellant's first trial he stipulated with the Commonwealth to decedent's cause of death, and furthermore, appellant did not request Judge STRAUSS to instruct the jury on causation. Without a scintilla of evidence that decedent died as result of some other cause than the bullet wounds, a rational jury cannot be presumed to have found that the decedent died from anything but those wounds. The Commonwealth's argument in this regard is without merit.

It is apparent from a review of the entire record in this matter that the "ultimate issue of fact" before the

jury in appellant's first trial was whether or not he was a participant in the robbery which resulted in the death of the owner of the store which was robbed. If this jury is assumed to have acted rationally, after hearing conflicting testimony as to this ultimate issue, they must have entertained a reasonable doubt as to whether appellant was one of the robbers. "Only as a result of this decision as to the ultimate fact, could [the jury] acquit [appellant] of the felony-murder with which he was charged." Dissenting opinion by Judge STRAUSS.

For the above reasons we hold that the Commonwealth had a full and fair opportunity to litigate the issue of whether appellant participated in the armed robbery at his first trial. The jury at that trial found that appellant was not a participant in the robbery. The constitutional guarantee against double jeopardy bars the Commonwealth from relitigating this issue, "[f]or whatever else that constitutional guarantee may embrace, North Carolina v. Pearce, 395 U.S. 711, 717, 89 S. Ct. 2072, 2076, it surely protects a man who has been acquitted from having to 'run the gantlet' a second time. Green v. United States, 355 U.S. 184, 190, 78 S. Ct. 221, 225, 2 L. Ed. 2d 199." *Ashe v. Swenson,* supra at 445-446.

The judgment of sentence is vacated and appellant is discharged.

WATKINS, J., dissents.