Commonwealth, Appellant, *v.* Dooley.

Argued April 9, 1973. Before Wright, P. J., Watkins, Jacobs, Hoffman, Spaulding, Cercone, and Spaeth, JJ.

*Robert L. Eberhardt,* Assistant District Attorney, with him *Robert W. Duggan,* District Attorney, for Commonwealth, appellant.

*John R. Cook,* Assistant Public Defender, with him *John J. Dean,* Assistant Public Defender, and *George H. Ross,* Public Defender, for appellee.

OPINION BY HOFFMAN, J., September 19, 1973:

The appellee, Charles Dooley was tried before the Honorable ALBERT A. FIOK and a jury on an indictment charging the arson felony murder of Mrs. Martha Day. After a three day trial, the jury returned a general verdict of acquittal. Subsequently, the Commonwealth proposed to try him on an indictment charging the arson of the building in which Mrs. Day died. The appellee moved to dismiss this indictment alleging that the trial was barred by his felony murder acquittal. Without disposition of this motion, the court ordered the appellee to trial which resulted in an arson conviction. Subsequently, a motion in arrest of judgment was filed alleging that the arson trial was in violation of his Fifth Amendment protection against being twice placed in jeopardy. A court *en banc* arrested judgment on the basis of *Commonwealth v. DeVaughn,* 221 Pa. Superior Ct. 410, 292 A. 2d 444 (1972). This appeal by the Commonwealth followed.

In *Ashe v. Swenson,* 397 U.S. 436 (1970), the United States Supreme Court held that the doctrine of collateral estoppel is embodied in the Fifth Amendment guarantee against double jeopardy. That doctrine "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment,

456

that issue cannot again be litigated between the same parties in any future lawsuit." 397 U.S. at 443. In applying this doctrine, the Court stated that "the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality. Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.' [Footnote omitted]. The inquiry 'must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.' [Citation omitted]. Any test more technically restrictive would, of course, simply amount to a rejection of the rule of collateral estoppel in criminal proceedings, at least in every case where the first judgment was based upon a general verdict of acquittal." 397 U.S. at 444. With this test in mind, this court must determine "whether the jury in [appellee's] first trial for felonious homicide could have rationally grounded its verdict of acquittal on any other issue than [appellee's] nonparticipation in the [arson]." *Commonwealth v. De-Vaughn*, 221 Pa. Superior Ct. 410, 413, 414, 292 A. 2d 444, 447 (1972).

The Commonwealth argues that the jury in the felony murder trial was faced with two ultimate issues, viz, whether appellant set fire to the building, and whether the decedent died as a result of that fire. The Commonwealth then argues that the jury could have found that Mrs. Day did not die as a result of the fire, and that, therefore, the issue of appellee's participation in the arson was not finally litigated so as to preclude a trial for the arson. To so argue is to merely state the diffi-

cult question[1] which this court must determine from a careful and searching examination of the record of the prior proceeding, keeping in mind that "[t]he 'twice put in jeopardy' language of the Constitution . . . relates to a *potential*, i.e., the *risk* that an accused for a second time will be convicted of the 'same offense' for which he was initially tried [and acquitted]." *Price v. Georgia*, 398 U.S. 323, 326, 90 S. Ct. 1757, 1759 (1970). (Emphasis added.)

Explicit in our decision in *DeVaughn* is a presumption that the jury in the first trial acted rationally in reaching its verdict of acquittal. Applying this presumption to the instant case, it is inconceivable that a rational jury in the first trial grounded its verdict of acquittal upon a finding that decedent did not die as a result of the fire.

The evidence showed that Mrs. Day died from severe cerebral injuries. These injuries were the result of being struck by a flat object with sharp edges. The evidence further showed that when ignited, the accellerant (gasoline) used by the arsonist exploded. As a result of this explosion, the door to the decedent's apartment was violently blown off the hinges into the apartment in the general area where decedent was later found. Bloodstains, which were never analyzed, were found on the edge of the door.[2] The Commonwealth's expert testified that the decedent's wounds were perfectly consistent with being struck by the door. This was the Commonwealth's theory of causation and the *only* evidence adduced as to causation was directed to proving

---

[1] Justice Schaefer of the Illinois Supreme Court has observed: "Collateral estoppel is . . . of limited value because it is not often possible to determine with precision how the judge or jury has decided any particular issue." Schaefer, Unresolved Issues in the Law of Double Jeopardy: Waller and Ashe, 58 Cal. L.R. 391, 394.

[2] One of the 26 photographs introduced into evidence by the Commonwealth showed the presence of bloodstains on the door.

458

this theory. In his extensive charge to the jury[3] the trial judge mentioned the issue of causation only once, and then, only briefly. Indeed, in an opinion[4] filed November 4, 1970, the trial judge stated convincingly that in his opinion, "[T]he evidence of the Commonwealth at the first trial disclosed that as a result of the fire and explosion, Martha Day was pronounced dead from cranial cerebral injuries." Thus, the trial judge was of the opinion that the Commonwealth convincingly proved its theory of causation.[5]

As in *DeVaughn*, "without a scintilla of evidence that decedent died as a result of some other cause than

___

[3] The judge's charge to the jury was over 70 pages long. The issue of causation was covered in one sentence, while the issue of appellee's participation in the arson was extensively covered.

[4] After appellee was acquitted of the felony murder of Mrs. Day, the Commonwealth attempted to try him for the homicides of two other people who died in the fire. Appellee filed motions to dismiss these indictments alleging that a trial thereon would place him twice in jeopardy. Judge Fiok's order and opinion sustained appellee's contention, holding that appellee could not be tried on those homicide charges as he had been previously acquitted of the same charges in the earlier trial in which the same issues had been litigated and determined in his favor.

[5] Although there is no need to weigh the sufficiency of the evidence, a review of the evidence would indicate that the jury was justified in concluding that appellee was not a participant in the arson. He was seriously injured in the fire. Analysis of his clothing did not disclose the presence of gasoline residue although the Commonwealth's expert stated that it would have been detected if present. Appellee's fingerprints were not found on the gasoline can. The only evidence linking appellee with the fire was the weak identification made by a taxicab driver who identified appellee as a passenger he drove to a gasoline station to obtain a can of gasoline. This witness stated that his passenger was wearing coveralls. When found by the police, appellee was wearing a shirt and trousers. The driver had been working for twenty straight hours when this passenger boarded, and was, as he stated, more concerned with watching the road than anything else. The gas station attendant who recalled selling the gasoline could not identify the appellee as the purchaser despite a good opportunity to observe him.

the [fire], a rational jury cannot be presumed to have found tht the decedent died from anything but those" injuries received in the fire. *Commonwealth v. De-Vaughn*, 221 Pa. Superior Ct. 410, 417, 292 A. 2d 444, 448, 449 (1972). For us to conclude that the jury did not find that decedent died as a result of the fire would be to assume that the jury disregarded the evidence presented as to causation, and speculated that death was caused by some other mysterious agency.

We, therefore, conclude that the ultimate issue determined by the jury in appellee's first trial was his non-participation in the arson. Any other conclusion would attribute to the jury an element of irrationality inconsistent with the application of the doctrine of collateral estoppel in criminal cases.[6]

The order of the lower court is affirmed.[7]

---

[6] "If a later court is permitted to state that the jury may have disbelieved substantial and uncontradicted evidence of the prosecution on a point the defendant did not contest, the possible multiplicity of prosecutions is staggering . . . . In fact, such a restrictive definition of 'determined' amounts simply to a rejection of collateral estoppel, since it is impossible to imagine a statutory offense in which the government has to prove only one element or issue to sustain a conviction." Mayers & Yarbrough, *Bis Vexari*: New Trials and Successive Prosecutions, 74 Harv. L. Rev. 1, 38.

[7] This case was argued, and appellee's trial occurred before the Pennsylvania Supreme Court decided *Commonwealth v. Campana*, 452 Pa. 233 (1973). That case held that where multiple criminal offenses arise from the same "act", "episode", or "transaction", all offenses must be tried in one prosecution. *Campana's* holding would have prevented the appellee from being tried for arson after being acquitted of felony murder. Whether *Campana's* holding is applicable to the instant case is questionable. Justice ROBERTS, joined by Justices O'BRIEN and MANDERINO, viewed compulsory joinder of offenses as mandatory under the double jeopardy provision of the Fifth Amendment. Chief Justice JONES, Justices EAGEN and NIX, would require joinder, but not as a constitutional requirement. The three justices who did not view joinder as a constitutional requirement would apparently give prospective effect to the rule. As this case can be decided under the *Ashe* doctrine of collateral estoppel,

460

DISSENTING OPINION BY CERCONE, J.:

I respectfully dissent.

Defendant Charles Dooley originally stood trial for the felony murder of one Martha Day resulting from the arson of an apartment building at 710 West North Avenue, North Side, Pittsburgh, Pennsylvania. That murder case was given to the jury for its consideration on two issues (1) whether or not defendant had in fact committed the crime of arson, and (2) whether that offense proximately caused the death of Martha Day. The jury returned a verdict of acquittal.

Thereafter, the Commonwealth attempted to try defendant for the murders of Mary Carder and Kenneth Plater as victims of the same arson. The court, however, held the defense of autrefois acquit and the doctrine of collateral estoppel to be applicable and concluded that the Commonwealth is "precluded from proceeding with subsequent prosecution for murders against this defendant based on the same factual and legal issues which had been previously determined by the jury adversely to the Commonwealth."

The Commonwealth did not appeal but brought defendant to trial for the crime of arson,[1] which trial ended with a jury rendering a verdict of guilty. Defendant invoked the plea of double jeopardy, in consideration of which the trial judge granted defendant's motion in arrest of judgment holding that the issue was ruled by *Commonwealth v. DeVaughn,* 221 Pa. Superior Ct. 410, (1972), which decision was based on an application of the doctrine of collateral estoppel.

It is my opinion that the doctrine of collateral estoppel relied on in *DeVaughn* is not applicable in the

there is no need to determine the effect of *Campana* on cases pending appeal at the time *Campana* was decided.

[1] All these trials were based on separate indictments consecutively rendered at the same term of court, No. 2720 through 2726 of April 1970, which indictments included other charges not here material.

instant case. *DeVaughn* involved a felony murder aris-
ing out of armed robbery. At the felony-murder trial,
the ultimate issue presented to the jury for determina-
tion was whether defendant had participated in the
armed robbery during which the homicide occurred. The
jury found him not guilty. Our court there held that
in the second trial (for armed robbery) the ultimate
issue would be exactly the same as the one determined
in the first trial and therefore the second trial would
violate the defendant's right against double jeopardy
in accordance with the collateral estoppel principle and
extension of the Fifth Amendment guarantee enunciat-
ed in *Ashe v. Swenson*, 397 U.S. 436 (1970). In the
instant case, at the first trial for felony murder, two
issues were set forth by the court for the jury's deter-
mination. Since there is no way to determine upon
which of these two issues the jury based its verdict, the
doctrine of collateral estoppel would not apply to de-
fendant's second trial for arson: *Ashe v. Swenson*, su-
pra; *Comm. v. DeVaughn*, supra.

In fact, double jeopardy, which gives a broader cov-
erage of protection than collateral estoppel, is also not
present in this case. The nature of the guarantee
against double jeopardy is grounded on the universal
maxim that runs through Greek, Roman and English
common law that no man is to be brought into jeopardy
of his life more than once for the *same offense*. This
principle is encompassed in the double jeopardy clause
of the Fifth Amendment of our Federal Constitution
which is made enforcible against the states through the
Fourteenth Amendment: *Benton v. Maryland*, 395 U.S.
784 (1969) (made retroactive in the case of *Price v.
Georgia*, 398 U.S. 323). The test to determine whether
an accused stands in danger of being tried twice for the
*same offense* was set forth in the case of *Blockberger v.
United States*, 284 U.S. 299, 304 (1932) where it was
held "that the test to be applied to determine whether

there are two offenses or only one is whether each provision (i.e., each charge) required proof of a fact which the other does not." In the instant case although the defendant's alleged commission of arson served as the basis for the felony murder charge yet it was necessary in that first trial that there be further evidence to establish that the arson was the proximate cause of the three deaths. Therefore, the murder charge required proof of a fact not required by the arson charge. In the trial for arson the conduct of setting the fire was sufficient to establish the crime. In the trial for murder it was necessary to show further that the arson was the proximate cause of the deaths.

Furthermore, the first trial was on a charge of murder only. Arson was not included as an offense in the indictment and defendant therefore could not have been convicted of arson at the first trial. A former acquittal would only be a bar to a subsequent prosecution where the defendant could have been convicted on the first indictment of the charge preferred in the second. *Comm. v. Comber*, 374 Pa. 570 (1953). Here, the jury could not have returned a verdict of arson against defendant at his first trial for felony murder because no separate and distinct charge of arson was before them.[2] The protection against double jeopardy extends no further than the offense[s] charged in the indictment at the initial prosecution, or of the offense[s] which a defendant may be properly convicted even though not actually charged in the indictment, i.e. (fornication in a rape case, arson and larceny in a robbery case) : *Hilands v. Comm.*, 114 Pa. 372 (1886). Accordingly since defendant was not placed in jeopardy of being convicted for arson at his first trial, his subsequent trial on

---

[2] A separate charge of arson was not presented along with the felony murder charge presumably in accordance with Rule 219 of the Pa. Rules of Criminal Procedure.

the charge of arson, was not a violation of his Fifth Amendment right against double jeopardy.

Following the decision of *Ciucci v. Illinois*, 356 U.S. 571 (1958), recent United States Supreme Court cases have upheld the right of a state to prosecute individual offenses, arising out of one occurrence, singly at separate trials, in the absence of proof establishing that the trials entailed fundamental unfairness: *Miller v. Oregon*, 405 U.S. 1047 (1972) (holding double jeopardy clause not violated when defendant was prosecuted for use of weapon during perpetration of a felony after being tried for violation of a City ordinance (possession of a concealed weapon), both crimes arising out of same transaction) ; *Grubb v. Oklahoma*, 409 U.S. 1017 (1972) (denied writ of certiorari where defendant was convicted in one trial of armed robbery followed by a second trial for kidnapping, both offenses arising out of the "same transaction") ; *Robinson v. Neil*, 409 U.S. 505, 93 S. Ct. 876, 35 L. Ed. 2d 29 (1973) (where court remanded in order to determine "whether the state and municipal prosecutions were actually for the same offense). These decisions can only be interpreted as holding that successive prosecutions for different offenses arising from the same transaction, however defined, are constitutionally permissible.

However, despite this general view of the United States Supreme Court on double jeopardy, the recent decision of the Pennsylvania Supreme Court in *Comm. v. Campana*, 452 Pa. 233, 304 A. 2d 432 (1973) and the general rule under the new Pa. Crimes Code (Sec. 110 (1) (ii) ) effective June 6, 1973, requiring joinder, seem to eliminate the need for the doctrine of collateral estoppel and the traditional approach to double jeopardy in Pennsylvania. The concern and travail which courts, legislatures and legal scholars have experienced down through the years over deciding whether or not an accused has been deprived of his constitutional right

against double jeopardy, all the phrases found in opinions and research articles such as "identity of issue", "identity of offenses", "separate offenses" and other expressions utilized in determining whether an accused was twice placed in jeopardy, have lost their original importance. Now, under the decision of *Campana* and the Crimes Code, supra, if the offenses were committed in one criminal episode they shall be consolidated for trial.

A majority of the court however did not agree in the *Campana* case that the lack of joinder presented a constitutional issue, the deprivation of which violated the defendant's constitutional rights. Therefore, even if applicable to the facts of this case, that decision is not binding[3] upon us so as to require us to apply it to the facts of this case in protection of any constitutional rights of the defendant.

Furthermore, the new Pennsylvania Crimes Code which became effective after the *Campana* decision sets forth an exception to any required consolidation of charges, which exception would be applicable to the facts of this case and in accord with the reasoning of this court before set forth. Section 110(1)(iii)(A) provides for separate trials for offenses even though arising out of the same conduct where "each required proof of a fact not required by the other and the law defining each of such offenses is intended to prevent substantially different harm or evil." I am of the opinion that the felony murder doctrine, originating at common law and firmly established statutorily (including present re-enactment under the new Crimes Code, Section 2502(a)), in classifying as murder in the first

---

[3] *Comm. v. Cooper*, 444 Pa. 122, 278 A. 2d 895 (1971), *Comm. v. Silverman*, 442 Pa. 211, 275 A. 2d 308 (1971), *Comm. v. Little*, 432 Pa. 256, 248 A. 2d 32 (1968), *Comm. v. Wagner*, 221 Pa. Superior Ct. 50, 60 (1972).

degree, a killing which occurs in the commission of an enumerated felony, intends beyond question, to prevent a substantially different harm or evil. The charge of felony-murder certainly was intended to prevent a substantially different harm or evil than that resulting from an arson alone. "To the victim criminal conduct is readily divisible and intensely personal; each offense is an offense against a person." To say that a trial on a charge of felony murder precludes a trial on the underlying felony such as rape, kidnapping, arson, burglary or robbery on the grounds of double jeopardy "demeans the dignity of the human personality and individuality." As Chief Justice BURGER states, "no court that elevates the individual rights and human dignity of the accused to a high place—as we should—ought to be so casual as to treat the victim as a single homogenized lump of clay. I would grant the dignity of individual status to the victim as much as to those accused, not more but surely not less": *Ashe v. Swenson,* supra (dissenting opinion).

In my view the separate trial of the defendant on the arson charges was permissible and proper, and that the court below erred in holding defendant's constitutional rights were violated by such subsequent trial.

I would reverse the order of the court below and remand for sentencing.