# Montgomery County v. Commonwealth

*Roger B. Reynolds* and *Hershel J. Richman*, for appellants.
*Ralph E. Kates, III*, for Commonwealth.
*Peter Platten*, for intervenor.

WATERS, *Chairman*, September 29, 1975—This matter comes before the board as an appeal from the issuance by the Department of Environmental

Resources (hereinafter DER) of a soil erosion and sedimentation permit and dams and encroachments permits as amended for the stream crossings by an 18 inch oil pipeline to be constructed by intervenor, Interstate Energy Company, from Marcus Hook to Martins Creek, Pa. The pipeline crosses five[1] counties, including Montgomery and Bucks as well as Springfield Township, and these three have filed appeals from the permit grant. Mary Bean Rogers, on behalf of S.T.O.P.S., an organization interested in stopping the pipeline, has also appealed and the matters were consolidated by the board.

A supersedeas was requested early in the proceeding and, after all of the testimony was concluded, the same was granted because it appeared that Interstate Energy Company (hereinafter I.E.C.) intended to have the pipeline cross a number of streams for which no permit had been granted by DER. Subsequently DER issued a permit for the additional crossings and the supersedeas expired by its own terms.

Appellants have extended their arguments to cover not only the limited permits but a number of matters concerning the water supply and the adequacy of the pipeline for the preservation thereof.

## FINDINGS OF FACT

1. The Environmental Hearing Board (hereinafter EHB) received appeals from the issuance of certain permits issued to I.E.C. by DER. Appellants are County of Montgomery, the Commissioners of

---

1. Delaware, Chester and Northampton Counties are not parties.

the County of Bucks, Mary Bean Rogers for Stop The Oil Pipeline Society (S.T.O.P.S.), and the Board of Supervisors of Springfield Township, Bucks County.

2. Appellee is the Commonwealth of Pennsylvania, Department of Environmental Resources.

3. The County of Montgomery, Mary Bean Rogers and the Commissioners of the County of Bucks filed appeals with the EHB on or about December 6, 1974, from the issuance by DER to I.E.C. of erosion and sedimentation control permit no. 4673802. The Board of Supervisors of Springfield Township filed an appeal with the EHB on or about November 27, 1974, from the issuance by DER to I.E.C. of erosion and sedimentation control permit no. 4673802, dams and encroachments permits nos. 0973708 and 0973709, later amended to include dams and encroachments permit no. 20674.

4. The I.E.C. pipeline is to be constructed from Marcus Hook, Pa. to Martins Creek, Pa.

5. On February 6, 1973, the Pennsylvania Public Utility Commission (hereinafter P.U.C.) issued its certificate of public convenience, together with an accompanying order of the same date, authorizing the alignment, construction and operation of the aforesaid I.E.C. pipeline for the purpose of transporting low-sulfur boiler fuel for electric generating stations.

6. The P.U.C. order of February 6, 1973, was affirmed by a unanimous Commonwealth Court of Pennsylvania, on appeal by appellants herein, on December 12, 1973: Bucks County Board of Commissioners et al. v. Pa. P.U.C., 11 Pa. Commonwealth Ct. 487, 313 A. 2d 185 (1973), petition for reargument denied January 8, 1974, allocatur denied per curiam by the Pennsylvania Supreme Court on May 16, 1974.

7. On April 18, 1973, I.E.C. filed with the Delaware River Basin Commission (hereinafter DRBC) its application for the inclusion of the pipeline project in the DRBC's comprehensive plan for the Delaware River Basin. As required by DRBC's regulations, I.E.C. also filed its environmental impact assessment for the Insulated Fuel-Oil Pipeline, hereinafter the Pace Report, at the same time.

8. The purpose of this report was to describe the environment and to assess the impact of the proposed pipeline system on that environment as required by the DRBC pursuant to its obligations under the requirements of the National Environmental Policy Act, P.L. 91-190; 42 USC §4321, 83 Stat. 852.

9. The DRBC gave notice of and circulated the Pace Report to numerous Federal, State and local agencies and persons, including appellants herein and DER.

10. On January 14, 1974, the DRBC gave notice of and circulated its draft environmental impact statement (hereinafter EIS) on I.E.C.'s proposed oil-bearing pipeline to numerous Federal, State and local agencies and persons, including appellants herein and DER.

11. By decision dated September 25, 1974, in docket no. D-71-109-CP, the DRBC approved the inclusion of the I.E.C. pipeline in the comprehensive plan for the Delaware River Basin pursuant to section 3.8 of the Delaware River Basin Compact, and directed its executive director to issue a water quality certificate in accordance with section 401 of the Federal Water Pollution Control Act 33 USC §1171, as amended, October 18, 1972, 33 USC §1341, P.L. 92-500, 86 Stat. 877.

12. Concurrently with proceedings before the DRBC, I.E.C. made application to DER for all per-

mits required by DER for the pipeline, including, inter alia, an erosion and sedimentation control permit and various dams and encroachments permits.

13 I.E.C. received the following permits which are those from which the instant appeals are taken:

(a) Erosion and sedimentation control permit no. 4673802;

(b) Dams and encroachments permit no. 20674;

(c) Dams and encroachments permit no. 0973708; and

(d) Dams and encroachments permit no. 0973709 (as amended by letter dated July 24, 1975, from Mr. V. R. Butler, Chief, Division of Dams and Encroachments).

14. The P.U.C. reviewed the entire pipeline project from location, engineering and ecological standpoints and its actions with respect to the provisions of article I, section 27 of the Pennsylvania Constitution were approved by the Commonwealth Court.

15. Upon the completion of each stream crossing, the stream bed and banks will be stabilized and restored to their original contour, and appropriate vegetative cover will be added.

16. The pipeline passes near a potential underground water supply source for the Springtown Water Company.

17. I.E.C.'s construction procedure for crossing streams and potential water supply sources is sufficient to protect the stream integrity, aquatic biology and the subsurface waters.

18. The engineering design and method to be used by I.E.C. in constructing the pipeline under the bed and across the channel of the various streams and in other areas included within the erosion and sedimentation permit and thereafter

operating the pipeline is a standard design and method accepted by the engineering profession and regulatory agencies, and should provide an adequate and safe instrumentality.

19. The pipeline, as approved by the P.U.C., the DRBC and permitted by DER, will not have any material permanent adverse effects on the environment of each stream crossed or the terrain included within the erosion and sedimentation permit.

## DISCUSSION

The major and overriding issue which must be resolved by this proceeding concerns the matter of res judicata and its related concepts.

The record indicates that a previous battle in this pipeline was fought in our Commonwealth Court. There, I.E.C. was called upon to defend the certificate of public convenience issued to it after hearing before the Pennsylvania Public Utility Commission.[2] The commission, of course, is authorized by the legislature to investigate utility proposals and to make the exact kinds of decisions as it reached in that case. I.E.C. was, in short, permitted to build an oil pipeline from Martins Creek to Marcus Hook to carry oil to be used in generating needed electrical power. Most of the same parties in this board proceeding previously appeared in court,[3] along with some who have ap-

---

2. See the Public Utility Law, of May 28, 1937, P.L. 1053 (No. 286), art. 1, sec. 1, et seq., 66 PS §§1101, et seq.

3. Bucks County Board of Commissioners, Bucks County Planning Commission, Montgomery County Board of Commissioners, Montgomery County Planning Commission, Richardson Dilworth and Andrew L. Lewis, Jr., Trustees of the

parently dropped from the skirmish. The court was called upon to decide, among other things, whether the certificate issued by P.U.C. violated article I, section 27 of the Pennsylvania Constitution.[4] Speaking through Judge Rogers, the court said:

"The appellants further contend that the Commission erred in law in failing to evaluate IEC's application under Article I, section 27, of the Pennsylvania Constitution, and in failing to apply that constitutional provision to IEC's application. The provision in question declares that the people have the right to clean air, pure water and the preservation of the natural, scenic, historic and esthetc values of the environment and requires the Commonwealth as trustee to conserve and maintain the State's natural resources. . . .

". . . We were presented the same argument in Payne v. Kassab et al., 11 Pa. Commonwealth Ct. 14, 312 A. 2d 86 (No. 1061 C.D. 1971, filed

---

Property of Reading Co., Debtor, S.T.O.P.S., Bi-County Environmental Committee and Mary Bean Rogers, Appellant, v. Commonwealth of Pennsylvania, Pennsylvania Public Utility Commission, Appellee, and Interstate Energy Company and Pennsylvania Power and Light Company, Intervening Appellee. Commonwealth of Pennsylvania, Department of Transportation, Appellant, v. Commonwealth of Pennsylvania, Pennsylvania Public Utility Commission, Appellee, and Interstate Energy Company, Intervening Appellee, 11 Pa. Commonwealth Ct. 487, 496-499, 313 A. 2d 185 (1973).

4. Article I, section 27, provides:

"The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment. Pennsylvania's public natural resources are the common property of all of the people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people."

November 21, 1973), which Judge Mencer answered as follows:

\* \* \* \* \*

" 'Likewise, it becomes difficult to imagine any activity in the vicinity of River Street that would not offend the interpretation of Article I, Section 27 which plaintiffs urge upon us. We hold that Section 27 was intended to allow the normal development of property in the Commonwealth, while at the same time constitutionally affixing a public trust concept to the management of public natural resources of Pennsylvania. The result of our holding is a controlled development of resources rather than no development.

" 'We must recognize, as a corollary of such a conclusion, that decision makers will be faced with the constant and difficult task of weighing conflicting environmental and social concerns in arriving at a course of action that will be expedient as well as reflective of the high priority which constitutionally has been placed on the conservation of our natural, scenic, esthetic and historical resources.

" 'Judicial review of the endless decisions that will result from such a balancing of environmental and social concerns must be realistic and not merely legalistic. The court's role must be to test the decision under review by a threefold standard: (1) Was there compliance with all applicable statutes and regulations relevant to the protection of the Commonwealth's public natural resources? (2) Does the record demonstrate a reasonable effort to reduce the environmental incursion to a minimum? (3) Does the environmental harm which will result from the challenged decision or action so clearly outweigh the benefits to be derived therefrom that to proceed further would be an

abuse of discretion?' The Commission here, although without the benefit of our opinion in Payne, in fact applied the standards of that case. It carefully considered the effects of the pipeline on the several values protected by Article I, Section 27 and balanced them against the necessity for increased energy. After assuring itself that IEC's proposal was carefully planned and the most acceptable means of providing fuel to the generators at Martins Creek, it concluded that the need for energy outweighed the indicated injury to the environment. Our consideration of the record compels agreement with that conclusion."

In effect, appellants now call upon this board to reverse or, at least, change the decision of our Commonwealth Court. Harboring serious doubts of our power to do so, even if so inclined, which we are not, we will fail to heed that call.

I.E.C., the intervenor, has argued and relied upon the doctrine of res judicata from the very inception of this proceeding.[5] It is stated in various ways but basically provides: A judgment rendered by a court of competent jurisdiction is conclusive as to all rights, questions or facts put in issue in the action in which it was rendered and actually adjudicated therein, when those rights, questions or facts again come into controversy between the same parties or their privies: Penn-O-Tax Oil & Leasehold Co. v. Big Four Oil & Gas Co., 298 Pa. 215, 148 Atl. 92 (1930); Commonwealth v. Dooley, 225 Pa. Superior Ct. 454, 310 A. 2d 690 (1973). It is unquestionably true that many of the questions arising under article I, section 27 were laid to rest

5. A motion to dismiss the appeal based in part on this theory was denied without opinion.

by the Commonwealth Court. Appellant argues, however, that there were other specific matters, like the number and placement of check valves which were not raised in the earlier proceeding. The answer to that is simple. The doctrine of res judicata extends, not only to matters raised, but to all matters that could have been raised in the earlier proceeding: Commonwealth ex rel. Baer v. Baer, 9 Adams 60; Ohio Tp. v. Builders Enterprises, Inc., 2 Pa. Commonwealth Ct. 39, 276 A. 2d 556, 1971, affd. 446 Pa. 319, 284 A. 2d 686 (1971).

The more serious problem, however, is the identity of parties, which is also required in order for the doctrine to apply. The fact is that DER was not a party to the previous suit. Although it is not DER who opposes the application of the res judicata doctrine, that is not material. I.E.C. has asked this board to find in its favor on legal grounds which are not fully made out by the essential supporting facts.

It does not follow, in our opinion, that the findings and decision of the Commonwealth Court have no relevance or value in this proceeding. This board, in reaching a final decision, is guided by the following language in Warren Sand & Gravel Co., Inc. v. Commonwealth, and Commonwealth v. Warren Sand & Gravel Co., Inc., 20 Pa. Commonwealth Ct. 186 (1975):

". . . In cases such as this, we are not required to review an administrative decision by DER which was rendered without a due process hearing, because as we view the Administrative Agency Law and section 1921-A of the Code, when an appeal is taken from DER to the Board the Board is required to conduct a hearing de novo in accordance with the provisions of the Administrative Agency Law. In cases such as

this, the Board is not an appellate body with a limited scope of review attempting to determine if DER's action can be supported by the evidence received at DER's factfinding hearing. The Board's duty is to determine if DER's action can be sustained or supported by the evidence taken by the Board. If DER acts pursuant to a mandatory provision of a statute or regulation, then the only question before the Board is whether to uphold or vacate DER's action. If, however, DER acts with discretionary authority, then the Board, based upon the record made before it, may substitute its discretion for that of DER. See East Pennsboro Township Authority v. Commonwealth of Pennsylvania, Department of Environmental Resources, 18 Pa. Commonwealth Ct. 58, 334 A. 2d 798 (1975) and Rochez Bros., Inc. v. Commonwealth of Pennsylvania, Department of Environmental Resources, 18 Pa. Commonwealth Ct. 137, 334 A. 2d 790 (1975). DER's authority to attach terms and conditions to the permit in the instant case was obviously discretionary and, therefore, the Board could properly substitute its discretion concerning the terms and conditions for that of DER. . . ."

The board, therefore, has not ignored the conclusions reached by an appellate court of our State in an intimately related judicial proceeding. It is, of course, true that if appellant can show that there have been or will be violations of article I, section 27 of the Constitution, even though Commonwealth Court found full compliance, we are authorized to so declare as to the specific action of DER which brings this matter before us, and any additional conditions clearly called for can be imposed.

There are a number of important matters which we believe to be foreclosed in this proceeding, not

because of any technical doctrine of res judicata, but simply because they are not matters within the jurisdiction of this board on the appeal before us. As indicated previously, it is the P.U.C. which has been designated to authorize such far-reaching projects for oil transmission as is proposed by I.E.C. The courts have consistently held that DER does not have the sole responsibility of enforcing article I, section 27, and preserving the environment.[6] The P.U.C. is equally charged with that duty within its sphere of influence which, for purpose of this matter, covers the entire pipeline. That sphere, in our opinion, covers the pipeline design[7] and hardware, route and consequences of rupture, other than at stream crossings.

Appellant Bucks County makes much of the fact that the pipeline will traverse terrain where there are substantial municipal water supplies needed for present and perhaps future use.[8] Keeping in mind that we have before us appeals from a soil erosion and sedimentation permit and from permits allowing stream crossings, we are unable to expand our subject matter jurisdiction to span the many issues raised as to the pipeline in general.

Appellant Mary Bean Rogers has raised numerous questions because DER, in notifying her of the

6. See Community College of Delaware County v. Fox, 654 C. D. 1974 (July 18, 1975) and Central Delaware County Authority v. Fox, 743 C. D. 1974 (July 18, 1975).

7. We believe that these matters by necessity include: The life of the pipeline, leak detection, results of oil spill, time and method of cleaning up and disposing of soil, valves needed and placement corrosion, oxidation, results of electricity, location with reference to water supply, control center use and placement.

8. The Springtown watershed and Lake Nockamixon as well as Tohickon and Cooks Creek have raised special concern.

issuance of the erosion and sedimentation permit, implied there was a single permit for the entire pipeline. In a sense it was, but we can see the basis for a misunderstanding. We cannot, however see any prejudice to appellant's rights by this notification—which led to the appeal now before us.

The difficult question which remains unanswered is: What decision making, if any has been left to DER by P.U.C. regarding the pipeline?

We will not attempt to enumerate every conceivable question that can properly be raised for decision with DER and before this board after a decision has already been reached by another agency of government on a related matter with powers equal to our own, as in this case.[9] Suffice it to say that all matters related to the placement of a pipeline under the stream bed itself are proper for our review. The main questions raised by appellants range far beyond this limited inquiry. We believe the limitation is set by the nature of the permit from which the appeals are taken. With regard to the erosion and sedimentation permit covering the entire

_____

9. The language of Community College of Delaware County v. Fox, 654 C. D. 1974 (July 18, 1975) and Central Delaware County Authority v. Fox, 743 C. D. 1974 (July 18, 1975), is precisely on point:

"We would earnestly hope for some legislative clarification of the questions suggested here, or even for appropriate Executive Board action where such is possible. Until there is such clarification, however, we must hold that whenever and however the many agencies of the Commonwealth, state and local, share in the trusteeship responsibilities of Section 27, and however desirable some supervision and review of their efforts may be, the DER has not been designated and may not now function as the sole trustee, supervisor and/or coordinator of the Commonwealth's responsibilities as trustee under Section 27. . . ."

148

pipeline area, we are again limited to matters which are subject to control by such a permit. A review of the testimony and the briefs does not reveal any major objections to the method of controlling erosion during construction. There are, of course, questions about the need for the project and intense dissatisfaction with the construction taking place at all. We believe, however, our role does not extend to those concerns previously dealt with in another forum. Our view is the same with regard to any matters which the Pennsylvania Fish Commission could have litigated based on concerns which it had.

Appellant Bucks County argues that, at most, the P.U.C. authorized a 3,000-foot corridor for the pipeline and that the line can be ordered moved by DER any place within that area. While we agree that to the extent a change was deemed necessary to protect streams or prevent erosion and sedimentation, this is true. Appellant, however, having the burden of proof, has not shown exactly what movement within the corridor would be in order.[10] I.E.C. has developed by extensive work a program for crossing the streams with the pipeline under the stream bed and for detecting any leaks which may occur while the pipeline is in operation. No matter what precautions are taken, there can be no guarantee that accidents or unexpected problems will not occur. It is easy enough to pinpoint areas where more precautions could be taken. This is

10. We, of course, appreciate the problem faced by appellant if it must, in effect, redesign a pipeline project of this magnitude. The problem is that this board is in no better position to do so without evidence from the party that alleges that it should be changed. Appellant is the only logical party to do this, inasmuch as DER does not agree that any changes are needed.

easily done regardless of how much care or planning has been done on the matter. A concrete coating, for example, can always be argued to be insufficient for a stream crossing as required on all but minor streams in this case.

We are satisfied that the precautions taken or to be taken at stream crossings are reasonable under all of the circumstances. That is not to say that no better or safer method could possibly be devised at any cost. That does not appear to be the case, nor is it required.

Our view with regard to the previous determinations made by the Delaware River Basin Commission,[11] to include this project in its comprehensive plan is the same as indicated regarding P.U.C. action. It is a matter we have considered along with all of the other evidence.

One final matter deserves our attention. I.E.C., the intervenor, has relied as evidence upon the environmental impact statement for the project prepared by the Pace Engineering Company and approved by DRBC. We received the report in evidence when offered by the president of I.E.C. under the Uniform Business Records as Evidence Act of May 4, 1939, P.L. 42 (No. 35) sec. I, 28 PS §91(a), and as a public record, both of which are exceptions to the hearsay rule in Pennsylvania. We believe that, inasmuch as the president of the company is deemed the custodian of all corporate business records and this board can take administrative notice of any public document (which this became when

---

11. We note that the DRBC decision approving this project stated that it was subject to all conditions imposed by DER. We believe the permit regulations under discussion here are themselves DER "conditions," to I.E.C. interpretation.

filed with a public agency), the report qualifies as properly admitted evidence for both reasons.

## CONCLUSIONS OF LAW

1. The board has jurisdiction, as limited hereinbefore, over the parties and subject matter of this proceeding.

2. Where appellants, having the burden of proof, allege that conditions should be added to or changes made in an authorized major pipeline project, they must demonstrate with exactness the changes needed as they relate to sedimentation and erosion and stream crossing plans, when, the appeal is from permits authorizing the same.

3. DER has properly issued an erosion and sedimentation permit and dams and encroachments permits as amended to I.E.C., intervenor in this proceeding, for the construction of an oil pipeline.

4. DER's action after technical review of the application and supporting data for the instant dams and encroachments permits and the erosion and sedimentation control permit and its approval of the said permits, adequately protected the environmental interests expressed in article I, section 27 of the Pennsylvania Constitution.

5. Resolution of issues such as coal versus oil, pipeline versus railroad, and possible Federal allocation of oil, general pipeline location and need are not within the jurisdiction ambit of the Department of Environmental Resources and, therefore, not properly before the Environmental Hearing Board.

## ORDER

And now, September 29, 1975, the appeals of County of Montgomery, Montgomery County

Commissioners, Commissioners of the County of Bucks, S.T.O.P.S., and the Board of Supervisors of Springfield Township are hereby dismissed and the action of the Department of Environmental Resources in the above matter is hereby sustained.