**UNITED STATES of America**

v.

**Clarence James SUTTON.**

**Cr. A. No. 26941.**

United States District Court
D. Maryland.

Sept. 1, 1965.

---

Thomas J. Kenney, U. S. Atty., and Paul M. Rosenberg, Asst. U. S. Atty., Baltimore, Md., for the United States.

A. Heaton Nash, Baltimore, Md., appointed by the court for defendant.

NORTHROP, District Judge.

Clarence James Sutton has moved this court to dismiss a four-count indictment charging him with having violated 18 U. S.C.A. § 2314, which reads in part as follows:

> "Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities, knowing the same to have been falsely made, forged, altered, or counterfeited * * *."

shall be punished as the law provides. More specifically, Sutton is charged with having transported falsely–made money orders across state lines, with unlawful and fraudulent intent, knowing them to have been falsely made. The basis of Sutton's motion to dismiss is a directed verdict of acquittal rendered him by Judge Prendergast in the Criminal Court of Baltimore City. The indictment which brought him to that court included charges of larceny and receiving the same money orders now described in the federal indictment.

The money orders involved in both indictments allegedly are among over 100 money orders stolen from the Little Bar, 101 North Pine Street, Baltimore, on July 20, 1964. Shortly thereafter, certain of the stolen money orders allegedly were received in various parts of the United States by relatives of Sutton. On July 31, 1964, Sutton was arrested by the Baltimore police, and on August 19, 1964, while still in the Baltimore City Jail, he gave a statement to an agent of the Federal Bureau of Investigation. On October 14, 1964, Sutton was tried in the state court and received a directed verdict of acquittal, which followed the exclusion of certain evidence at the trial. Seven months after this acquittal the Grand Jury for the District of Maryland returned the present indictment against Sutton. Defendant now claims (1) that *res judicata* bars the Government's prosecution since he has been acquitted of conduct necessary to convict him of the section 2314 violations, and (2) that the present action places him twice in jeopardy for offenses grounded upon the same conduct.

## I. COLLATERAL ESTOPPEL

*"Res judicata"* broadly covers all the binding effects of a former final adjudication. Defendant's arguments are based on notions of *collateral estoppel,* that portion of *res judicata* operative in the subsequent litigation by the same parties of a different cause of action involving some of the same issues determined in the prior litigation.[1]

Both fraudulent intent and knowledge are necessary elements of the Maryland crime of receiving stolen goods.[2] Defendant argues that elements of the section 2314 violation include the same fraudulent intent and knowledge required in the crime of which defendant has been acquitted, plus the additional element of interstate transportation.[3] Although one could have knowledge that securities have been forged without suspecting that those securities have been stolen, for purposes of this motion the federal statute is viewed only as requiring the general "guilty knowledge." Even so, defendant's argument of collateral estoppel must fail.

For collateral estoppel to apply in criminal cases, there must have been a prior adjudication, involving the same parties or their privies, in which the same issue was resolved favorably to the accused, either expressly or by necessary implication.[4] The requirement that the parties be the same or in privity is partly to assure that the respective interests of the parties in the former litigation are identical or substantially similar to the interests of the parties in a subsequent litigation. While assuming that the defendant's interests in the outcome of both the state and federal trials may be the same, this court cannot assume that the interest of the state of Maryland in prosecuting for the larceny or receiving of money orders is the same, either in kind or intensity, as the interest of the United States in prosecuting for the interstate transportation of forged money orders. The damage resulting from interstate transportation of forged securities, in fact, is necessarily of little interest to the state as compared to its interest in those offenses whose impact is felt entirely within its borders. That the state's interest in prosecuting larceny and receiving charges is in every case as urgent as the United States' interest in eliminating interstate traffic in forged securities is not so.

The doctrine of collateral estoppel cannot be utilized to prevent the

---

1. Restatement, Judgments § 68(1) (1942).

2. Jordan v. State, 219 Md. 36, 148 A.2d 292 (1959).

3. The court notes that the altered or forged nature of the security is also an element of the federal offense.

4. See, e.g., Hoag v. New Jersey, 356 U.S. 464, 78 S.Ct. 829, 2 L.Ed.2d 913, rehearing denied, 357 U.S. 933, 78 S.Ct. 1366, 2 L.Ed.2d 1375 (1958).

United States from prosecuting an alleged violation of its criminal laws when the conduct involved differs in kind from the conduct serving as the basis of a state prosecution, and when the United States was neither party nor privy to the state trial.[5]

## II. DOUBLE JEOPARDY

In United States v. Lanza,[6] prosecution in the federal courts was allowed to follow prosecution and conviction in the state courts for the same acts. Relying on Lanza, a majority of six justices again allowed a federal prosecution to follow a state conviction in Abbate v. United States.[7] A majority of five justices allowed a state prosecution to follow a federal acquittal in Bartkus v. Illinois.[8] Admittedly, these cases do not cover precisely the present sequence of state acquittal followed by federal prosecution. Prior consideration of the present factual pattern is not, however, totally absent.

United States v. Barnhart[9] involved federal prosecution of defendants for manslaughter, the alleged victim having been an Indian killed on a reservation in Oregon. Defendants pleaded *autrefois acquit*, or a former acquittal in an Oregon court of the same charge. In disposing of the plea, the court stated:

"[C]ounsel for the defendants contends that in the killing of the Indian William there was but one crime, if any, for which the defendants were subject to trial by either the state or the United States court, and that whichever of these juris-dictions first took cognizance of the case, took it with the absolute exclusion of the other, and therefore the defendants, having been first tried and acquitted on this charge in the state court, the question of their guilt or innocence is *res judicata,* and they cannot be retried upon it in this or any other court. This argument assumes that this homicide only involves one crime. * * *

"The United States had declared the killing to be murder or manslaughter * * * and provided for the punishment of the persons guilty of it in its own courts. The state also had a law providing for the punishment of persons guilty of such crimes, when committed within its geographical limits, not excluding this reservation. * * * But the crimes defined by these laws, however similar in circumstances or origin, are legally distinct. They are offenses against different sovereignties and triable in different courts."[10]

The court continued:

"A person living under two governments or jurisdictions, as does every inhabitant of the states of this Union, may commit two crimes by doing or omitting one act—one against the state and the other against the United States. And in such case the conviction or acquittal of the one crime, in a forum of the state, is no bar to a prosecution for

---

5. Defendant argues on page 9 of his brief that "as to the requirement of identity between the parties * * * res judicata should apply in the case at bar in that the state and federal governments had a concurrent right to prosecute and had knowledge of the alleged criminal acts prior to the first trial." Ignoring the implication that the United States could have demanded "first crack" at a defendant arrested by state officers on a state charge, from the facts of knowledge and concurrent right to prosecute, I can only infer that the United States chose to let the state of Maryland exhaust its jurisdiction before prosecuting for the federal offense. The fact of cooperation between state and federal officers does not by itself establish privity.

6. 260 U.S. 377, 43 S.Ct. 141, 67 L.Ed. 314 (1922).

7. 359 U.S. 187, 79 S.Ct. 666 (1959).

8. 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959).

9. 22 Fed. 285 (C.C.D. Ore. 1884).

10. Id. at 288–89.

the other, in a forum of the United States. \* \* \* [The 'double jeopardy' clause of the fifth amendment] does not apply, for the offenses are not the same. This [double jeopardy] inhibition is a limitation upon the power of the government of the United States, and not that of the state, \* \* \* and its only effect is to restrain the former from putting any person in jeopardy twice for the same offense; that is, an offense defined by its laws and triable in its courts. It matters not how often a person has been put in jeopardy elsewhere or otherwise on account of the act or conduct constituting such crime; it is no defense to a prosecution, therefore, in the courts of the United States."[11]

Avoiding both discussion of the relatively few cases in this area since Barnhart[12] and extensive commentary on the various views expressed in Abbate and Bartkus, I now turn to the recent case of Ferina v. United States,[13] which is relied upon strongly by the United States. Ferina had been convicted in the United States District Court for the Western District of Missouri of obstructing justice by shooting a government witness. After rendition of the verdict, Ferina moved in the alternative for a judgment of acquittal, an arrest of judgment, or a new trial, contending

"primarily that a former judgment of acquittal on an aggravated assault charge in the State Court of Missouri was res judicata and that his retrial in federal court for the same offense constituted double jeopardy in contravention of his rights under the Fifth Amendment to the United States Constitution. \* \* \* "[14]

The motions were denied, and the double-jeopardy claim was not renewed on appeal.

In a subsequent collateral attack on the judgment of conviction and the sentence imposed, Ferina again pressed the double-jeopardy and collateral-estoppel points. After holding that the claims had been waived because not pressed until after the trial had concluded, the court went on to state:

"Nevertheless, we would be compelled on the merits to hold that the defense of double jeopardy is unavailing to petitioner under the circumstances and existent law. Petitioner was not prosecuted twice for the same offense before tribunals deriving their authority from the same sovereign. He was prosecuted and acquitted in the State Court of Missouri under its penal code for the felonious assault with a loaded pistol with the intent to kill. His indictment and conviction in federal court were for obstructing and conspiring to obstruct justice by injuring a Government witness \* \* \*.

"The plea of double jeopardy is not only inappropriately raised where, as in the instant case, there is a lack of identity between the two offenses due to the dissimilarity in the elements of proof, \* \* \* but also is improvidently asserted even if given identical offenses, [for] their proscription emanates from different sovereigns. \* \* \* [citing Abbate, Bartkus, and Lanza]

"Counsel for petitioner urges that we take the initiative and hold contrary to the majority opinions in these decisions because subsequent changes in personnel on the bench of the Supreme Court have resulted in a realignment of majority opinion now favoring the dissenter's argument that the Fifth Amendment prohibition against double jeopardy was 'intended to establish

---

11. Id. at 290.

12. The cases are discussed in the various opinions in Abbate and Bartkus.

13. 340 F.2d 837 (8 Cir.), cert. denied, 381 U.S. 902, 85 S.Ct. 1446, 14 L.Ed.2d 284 (1965).

14. 340 F.2d at 838.

a broad national policy against federal courts trying or punishing a man a second time after acquittal or conviction in any court.' Dissenting opinion of Mr. Justice Black, Abbate v. United States, supra, 359 U.S. at 203, 79 S.Ct. at 675.

"This Court does not forecast the law of the Supreme Court when and if it should decide to reverse itself on the issues raised here. We are obliged to rigorously apply the prevailing, majority precedent." [15]

 This court has studied with care the six separate opinions in Abbate and Bartkus. Further, it recognizes that Barnhart [16] involved elements of frontier justice and Indian wars, that the lengthy quotation from Ferina is dictum, that there is no Fourth Circuit case on point, that Bartkus involved the Fourteenth Amendment while the present case involves the Fifth Amendment, and that situations such as the one now presented are rare (perhaps indicating a certain understandable distaste for prosecutions following acquittals). While one can appreciate Mr. Justice Black's lament in Abbate that "the legal logic used to prove one thing to be two is too subtle \* \* \* to grasp," [17] this court reads the majority opinions in Abbate and Bartkus as permitting a subsequent federal prosecution where, as here, the charges are of different offenses against different sovereigns, where the interests sought to be protected by each sovereign are different, and where the defendant has not yet been placed in jeopardy in a federal court for a federal offense which differs materially from any prior offense, arising out of the same or related conduct, for which he has been tried.

It is, therefore, this first day of September, 1965,

Ordered that the motion to dismiss the indictment be, and hereby is, denied.

15. Id. at 839.

16. 22 Fed. 285 (C.C.D. Ore. 1884), quoted at notes 10, 11 supra.

17. 359 U.S. at 202, 79 S.Ct. at 675, 3 L. Ed.2d at 738.