Commonwealth, Appellant, *v.* Studebaker.

Commonwealth, Appellant, *v.* Grazier.

Argued September 10, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*J. Andrew Smyser*, Deputy Attorney General, and *Gordon E. Stroup*, District Attorney, with them *Robert T. Kane*, Attorney General, for Commonwealth, appellant.

*H. David Rothman*, for appellee, Eldon G. Studebaker.

*Samuel J. Reich*, with him *Mark L. Glosser*, and *Cooper, Schwartz, Diamond & Reich*, for appellee, Frank E. Grazier.

OPINION BY JACOBS, J., April 22, 1976:

On March 1, 1969, a fire of incendiary origin destroyed the New Hoffman Hotel in Bedford, Pennsylvania. On October 17, 1973, an indictment was returned to the United States District Court for the Western District of Pennsylvania charging the appellees, Eldon G. Studebaker and Frank E. Grazier, and two co-defendants with twenty-two counts of mail fraud and conspiracy to commit mail fraud in violation of a federal mail fraud statute.[1] After the federal indictment was returned, state criminal complaints were filed on December 27, 1973 charging the appellees and one of the co-defendants in the federal case with the Pennsylvania crime of arson.[2] A preliminary hearing on the state charges was held in Bedford County on January 8, 1974.

---

1. 18 U.S.C. §1341 (1966), *as amended*, (Supp. 1976). The federal indictment charged the appellees and the two co-defendants with a scheme to defraud numerous insurance companies in that the appellees and the two co-defendants knew that the fire was neither accidental nor of undetermined or unknown origin.

2. Act of June 24, 1939, P.L. 872, §905, 18 P.S. §4905 (1945).

Trial by jury on the federal charges commenced on January 14, 1974. The state indictments on the charge of arson were returned in Bedford County, Court of Common Pleas, Criminal Division on February 8, 1974. On March 7, 1974, by the jury's verdict, the appellees were acquitted of the federal charges. The same jury returned verdicts of guilty against the two co-defendants.

On March 12, 1974, the appellees filed an application to quash the arson indictments. The appellees contended that the state prosecution would constitute double jeopardy and that the federal adjudication constituted a collateral estoppel to a state prosecution for arson. This application to quash was argued orally on August 28, 1974, and a hearing to establish the joint nature of the federal and state investigation of the fire and subsequent insurance claims was held on September 30, 1974. On May 1, 1975, the lower court granted the appellees' application and quashed the arson indictment. The instant appeal by the Commonwealth followed;[3] we reverse and order the indictments reinstated.[4]

The instant appeal, involving double jeopardy[5] and

---

3. The Commonwealth's right to appeal from an order quashing an indictment is well-established. See *Commonwealth v. Murray*, 217 Pa. Superior Ct. 307, 272 A.2d 201 (1970); *Commonwealth v. Banks*, 203 Pa. Superior Ct. 198, 199 A.2d 473 (1964).

4. On appeal, the appellees have extensively briefed the history of the federal prosecution, placing particular emphasis on the testimony presented in the federal trial. The reason for this is the appellees' contention that the federal acquittal on the mail fraud charges necessarily involved a jury determination that the appellees were innocent of arson. We do not reach this issue, and, therefore, need not undertake a complete review of the Federal proceedings. Our resolution of the issues presented in this appeal, only requires, in relating the history of this case, consideration of the procedural sequence involved.

5. The Fifth Amendment proscription against double jeopardy is applicable to the states through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784 (1969).

collateral estoppel[6] in the context of separate sovereigns indicting the same individuals for different offenses,[7] presents three independent, yet somewhat related, issues.

In *Commonwealth v. Mills*, 447 Pa. 163, 286 A.2d 638 (1971) our Supreme Court held that while the proscription against double jeopardy does not preclude successive prosecutions by different sovereigns, purely as a matter of Pennsylvania law an "interest analysis" test[8] is applied when a state prosecution follows a *conviction* by a different sovereign for the *same offense*. The first issue presented, in light of the facts of this appeal, is whether *Commonwealth v. Mills*, supra, requires that the same "interest analysis" test be applied when different sovereigns are prosecuting the same individuals for *different offenses*, and the state prosecution follows acquittals of the federal offense.[9] The second issue

---

6. The rule of collateral estoppel applies in criminal proceedings, and is embodied in the Fifth Amendment guarantee against double jeopardy. *Ashe v. Swenson*, 397 U.S. 436 (1970).

7. For reasons that follow in the text, *Ashe v. Swenson*, 397 U.S. 436 (1970), *Commonwealth v. Mills*, 447 Pa. 163, 286 A.2d 638 (1971), *Commonwealth v. Dooley*, 225 Pa. Superior Ct. 454, 310 A.2d 690 (1973), and *Commonwealth v. DeVaughn*, 221 Pa. Superior Ct. 410, 292 A.2d 444, *allocatur refused*, 221 Pa. Superior Ct. *xliv* (1972), are not controlling.

8. The test was framed as follows: "... henceforth in Pennsylvania, a *second prosecution and imposition of punishment for the same offense* will not be permitted unless it appears from the record that the interests of the Commonwealth of Pennsylvania and the jurisdiction which initially prosecuted and imposed punishment are substantially different. In other words, if it appears that the interests of this Commonwealth were not sufficiently protected in the initial prosecution, then a second prosecution and imposition of additional punishment in Pennsylvania will be allowed." *Commonwealth v. Mills*, 447 Pa. 163, 171-72, 286 A.2d 638, 642 (1971) (footnote omitted) (emphasis added).

9. Because we answer this question in the negative we need not undertake a complete review of the Federal proceedings on the charges of mail fraud in order to determine whether the interests of the Commonwealth relating to the arson charge were sufficiently protected.

presented by this appeal is whether the holding of the United States Supreme Court in *Ashe v. Swenson*, 397 U.S. 436 (1970), applying the rule of collateral estoppel[10] in the context of successive criminal prosecutions by the *same sovereign*, requires the application of collateral estoppel to successive criminal prosecutions by *different sovereigns*.[11] The third issue presented by this appeal is whether section 111 of the Crimes Code, [12] which codified the "interest analysis" test of *Commonwealth v. Mills*,

---

10.  The defense of collateral estoppel may be available even when the defense of double jeopardy is not. *Cf.* Annot., 9 A.L.R.3d 203 (1966). In *Ashe v. Swenson*, 397 U.S. 436 (1970), the majority did not conclude that the proscription against double jeopardy barred the second criminal prosecution, but held that collateral estoppel made the second prosecution wholly impermissible.

As this Court stated in *Commonwealth v. Lockhart*, 223 Pa. Superior Ct. 60, 63, 296 A.2d 883, 884-85 (1972):

"[I]f five individuals are robbed in a room at gunpoint, five separate robberies have occurred since each victim was placed in apprehension by the acts of the assailant. We have previously held that where separate crimes are committed against different individuals, *a defendant is not placed in double jeopardy by being tried for each crime*, even though the crimes took place at the same place and approximately the same time. Commonwealth ex rel. Spencer v. Banmiller, 186 Pa. Superior Ct. 99, 140 A.2d 860 (1958); Commonwealth ex rel. Kitzinger v. Claudy, 173 Pa. Superior Ct. 453, 98 A.2d 457 (1953)." (Emphasis added.)

In *Ashe v. Swenson*, supra, the petitioner had allegedly robbed six individuals who were playing poker. *See* text following this note.

11.  Because we answer this question in the negative we need not undertake a complete review of the Federal proceedings on the charges of mail fraud in order to determine whether "an issue of ultimate fact [appellees' involvement in the arson] has once been determined by a valid and final judgment [acquittal of mail fraud charges] ...." *Ashe v. Swenson*, 397 U.S. 436, 443 (1970).

12.  18 Pa.C.S. §111 (1973). This section provides:

"*When conduct constitutes an offense within the concurrent jurisdiction of this Commonwealth and of the United States or another state, a prosecution in any such other jurisdiction is a bar to a subsequent prosecution in this Commonwealth under the following circumstances:*

supra,[13] and the collateral estoppel test of *Ashe v. Swenson,* supra,[14] and made these tests applicable "[w]hen conduct constitutes an offense within the concurrent jurisdiction of this Commonwealth and of the United States ..." 18 Pa.C.S. §111 (1973), is applicable to the instant appeal. We consider these issues *seriatim,* and since the lower court found section 111 of the Crimes Code applicable and applied section 111(2) to quash the indictments for arson, we begin our analysis with that issue.

---

(1) The first prosecution resulted in an acquittal or in a conviction as defined in section 109 of this title (relating to when prosecution barred by former prosecution for same offense) and the subsequent prosecution is based on the same conduct unless:

(i) the offense of which the defendant was formerly convicted or acquitted and the offense for which he is subsequently prosecuted each requires proof of a fact not required by the other and the law defining each of such offenses is intended to prevent a substantially different harm or evil; or

(ii) the second offense was not consummated when the former trial began.

(2) The *former prosecution was terminated,* after the indictment was found, by an *acquittal* or by a final order or judgment for the defendant which has not been set aside, reversed or vacated *and which acquittal,* final order or judgment necessarily *required a determination inconsistent with a fact which must be established for conviction of the offense of which the defendant is subsequently prosecuted."* (Emphasis added.)

13. In *Commonwealth v. Saunders,* 456 Pa. 406, 322 A.2d 102 (1974) (applying the holding of *Commonwealth v. Mills,* 447 Pa. 163, 286 A.2d 638 (1971) to prosecutions prior to December 31, 1971, the date of the *Commonwealth v. Mills,* supra, decision) our Supreme Court stated that "[o]ur holding in Mills has since been adopted by the Legislature as §111 of the Crimes Code, 18 Pa.S. §111 (1973). See also Model Penal Code §1.10 (Proposed Official Draft, 1962), upon which §111 of the Crimes Code is modeled." *Id.* at 407 n.1, 322 A.2d at 102 n.1.

14. Section 111(2) of the Crimes Code is a "collateral estoppel" test. *See* note 12 supra.

I

*Section 111 of the Crimes Code*

It has been stated that in the absence of a statute the rule against double jeopardy does not apply as between separate sovereigns.[15] *See United States v. Lanza,* 260 U.S. 377 (1922).[16] The new Crimes Code of Pennsylvania, effective June 6, 1973 enacted 18 Pa.C.S. §111 (1973), *see* note 12 supra, which details those situations when successive prosecutions between different sovereigns are barred.[17]

The lower court found[18] 18 Pa.C.S. §111 (1973) applicable to the present case, and applying the "collateral estoppel" test embodied in section 111(2), *see* notes 12 and 14 supra, held that "[t]he Federal or former prosecution was terminated by an acquittal of the defendant[s] which necessarily required a determination of whether or not [they were] guilty of a conspiracy to commit arson."[19]

_____

15. However, in Pennsylvania this widely recognized statement is subject to modification. Even in the absence of section 111 of the Crimes Code, 18 Pa.C.S. §111 (1973), the Pennsylvania "interest analysis" test, *see* note 8 supra, must be considered before successive prosecutions by different sovereigns are permitted. *See* text following the note.

16. *United States v. Lanza,* 260 U.S. 377 (1922) was the predicate for *Abbate v. United States,* 359 U.S. 187 (1959) and *Bartkus v. Illinois,* 359 U.S. 121 (1959) which established that successive prosecutions in federal and state courts do not constitute double jeopardy. The continuing vitality of these cases is discussed in that portion of the text which considers the applicability of *Commonwealth v. Mills,* 447 Pa. 163, 286 A.2d 638 (1971) to the instant appeal.

17. However, section 111 is limited to those cases "[w]hen conduct constitutes an offense within the *concurrent jurisdiction* of this Commonwealth and of the United States ...." (Emphasis added.) This limitation relating to concurrent jurisdiction is discussed *infra* at note 21.

18. The lower court assumed the applicability of section 111 of the Crimes Code, without any discussion of the date of the alleged arson offense and the effective date of section 111.

19. The lower court also relied upon *Commonwealth v. DeVaughn,*

The Crimes Code does not apply to a prosecution for this alleged arson offense.[20] "Title 18 of the Consolidated

---

221 Pa. Superior Ct. 410, 292 A.2d 444, *allocatur refused*, 221 Pa. Superior Ct. *xliv* (1972). We find *Commonwealth v. DeVaughn*, supra, not controlling for reasons that follow in the text, considering the application of the holding in *Ashe v. Swenson*, 397 U.S. 436 (1970) to the instant appeal.

Further, the lower court placed significant emphasis on the extensive collaboration of the federal and state officials in the investigation of this case. We reject the import of this collaboration. *See* note 28 infra.

20. On appeal, the Commonwealth concedes the applicability of section 111. However, the Commonwealth did not concede the applicability of section 111 below. The Commonwealth submitted a memorandum of law to the lower court arguing that the elements of the statute were not present in this case. They referred specifically to the language of section 111: "[w]hen conduct constitutes an offense within the *concurrent jurisdiction* of this Commonwealth and of the United States ...." (Emphasis added.) In rebuttal thereof the appellees urged that whereas section 111 itself may not be applicable to this case [apparently conceding that the offense arose prior to the effective date of the statute], the principles of section 111 are properly applicable because section 111 is a codification of *Commonwealth v. Mills*, 447 Pa. 163, 286 A.2d 638 (1971) which decision was applied retroactively in *Commonwealth v. Saunders*, 456 Pa. 406, 322 A.2d 102 (1974). We cannot avoid the clear mandate of the statute; section 111 does not apply to offenses pre-dating the effective date of the Crimes Code.

The fact that section 111 is not applicable to this case does not, in and of itself, work a significant hardship upon the appellees. Section 111(1) contains an "interest analysis" test, *see* note 13 supra, and we consider the appropriateness of an "interest analysis" test in terms of the holding of our Supreme Court in *Commonwealth v. Mills*, supra, *see* text following this note. Section 111(2) contains a "collateral estoppel" test, *see* note 14 supra, and we consider the appropriateness of a "collateral estoppel" test in terms of the holding of the United States Supreme Court in *Ashe v. Swenson*, 397 U.S. 436 (1970).

Why then is it important for the appellees to establish the applicability of section 111? The reason, as will be discussed in the text following this note, is that the collateral estoppel test does not apply in cases involving prosecutions by different sovereigns. However, under section 111(2) a collateral estoppel test does apply in some cases

Pennsylvania Statutes (relating to crimes and offenses), as added by this act, does not apply to offenses committed prior to the effective date of this act and prosecutions for such offenses shall be governed by the prior law, which is continued in effect for that purpose, as if this act were not in force. For the purposes of this section, an offense was committed prior to the effective date of this act if any of the elements of the offense occurred prior thereto." Act of December 6, 1972, P.L. 1482, No. 334, §2. The alleged offense of arson occurred on March 1, 1969, prior to the effective date, June 6, 1973, of the Crimes Code.[21]

## II

### Commonwealth v. Mills, 447 Pa. 163, 286 A.2d 638 (1971)

---

involving "dual sovereignty." Section 111(2) applies only when there is conduct which "... constitutes an offense within the concurrent jurisdiction of this Commonwealth and of the United States ...." Because this case does not constitute one where there is concurrent jurisdiction over the alleged offenses, *see* note 21 infra, the appellees would be precluded from relying on the section 111(2) test of collateral estoppel even if the alleged arson offense post-dated the effective date of the statute.

21. Moreover, if the alleged arson offense had occurred subsequent to the effective date of June 6, 1973, we do not believe this particular case falls within the ambit of section 111. This section only applies "[w]hen conduct constitutes an offense within the *concurrent* jurisdiction of this Commonwealth and of the United States ...." (Emphasis added.) This appeal does not involve conduct constituting an offense within the concurrent jurisdiction of this Commonwealth and the United States. The Commonwealth has no offense for mail fraud, neither does the United States have an arson statute which applies to the burning of this hotel. This appeal is unlike *Commonwealth v. Mills*, 447 Pa. 163, 286 A.2d 638 (1971) and *Commonwealth v. Saunders*, 456 Pa. 406, 322 A.2d 102 (1974) wherein the offenses involved the robbery of federally insured savings and loan institutions. In these cases, the same criminal act gave rise to potential prosecutions and convictions by different sovereigns.

In *Commonwealth v. Mills*, 447 Pa. 163, 286 A.2d 638 (1971) the Court stated that "[t]he *sole question* presented by this appeal is whether or not a person may be *convicted and [emphasis original] punished in the courts in Pennsylvania if he has previously been convicted and punished in a federal court for the identical unlawful conduct.*" *Id.* at 165, 286 A.2d at 639 (emphasis added).

Initially, the Court in *Commonwealth v. Mills*, supra, considered the continuing vitality of the principle that successive prosecutions in federal and state courts do not constitute double jeopardy, and that the United States constitution does not proscribe a prosecution and conviction in a state jurisdiction after there has been a prosecution and conviction in the federal courts for the same act. Citing *Bartkus v. Illinois*, 359 U.S. 121 (1959) and *Abbate v. United States*, 359 U.S. 187 (1959), the Court observed that "[b]oth decisions cited the principle of 'dual sovereignty' enunciated in United States v. Lanza, 260 U.S. 377, 43 S. Ct. 141 (1922), wherein the court stated: 'We have here two sovereignties, deriving power from different sources, capable of dealing with the same subject matter within the same territory .... Each government in determining what shall be an offense against its peace and dignity is exercising its own sovereignty, not that of the other.

'It follows that an act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each'." *Commonwealth v. Mills*, supra at 166-67, 286 A.2d at 639.

The appellant in *Commonwealth v. Mills*, supra, urged that recent decisions[22] of the United States

---

22. *Murphy v. Waterfront Commission*, 378 U.S. 52 (1964) (state court may not constitutionally compel a witness given immunity from prosecution under its law to give testimony that might be used against him in the federal courts), and *Elkins v. United States*, 364 U.S. 206 (1960) (evidence seized by a state official and introduced during a prosecution in the federal courts is subject to Fourth Amendment scrutiny).

Supreme Court had "so eroded the 'dual sovereignty' concept formulated in *Lanza* that it is no longer viable" *Commonwealth v. Mills*, supra at 167, 286 A.2d at 640, and that *Benton v. Maryland*, 395 U.S. 784 (1969) bars "successive prosecutions for the same act ..." *Commonwealth v. Mills*, supra at 168, 286 A.2d at 640.

The Court specifically rejected these contentions,[23] *Commonwealth v. Mills*, supra at 167-68, 286 A.2d at 640, and concluded that "Bartkus is still the law and that successive prosecutions by the federal and state governments for the same offense do not constitute double jeopardy ...." *Commonwealth v. Mills*, supra at 169, 286 A.2d at 640. However, the Court went on to hold that while *Bartkus v. Illinois*, supra, is still the law, "henceforth in Pennsylvania, a second prosecution and *imposition of punishment* for the *same offense* will not be permitted unless it appears from the record that the interests of the Commonwealth of Pennsylvania and the jurisdiction which initially prosecuted and imposed punishment are substantially different." *Commonwealth v. Mills*, supra at 171-72, 286 A.2d at 642 (footnote omitted) (emphasis added).

This Pennsylvania rule of "interest analysis" was enunciated and applied in the following context: The appellant was arrested with an accomplice for the robbery of a federally insured savings and loan institution. He was indicted by both the federal and state sovereigns. He pled guilty to the federal indictment and was sentenced to a term of five years imprisonment. His motion to quash the state indictment was ultimately granted by the Supreme Court on the grounds that "the

---

23. In rejecting appellant's contentions, the Court noted, *inter alia*, that *Waller v. Florida*, 397 U.S. 387 (1970) (successive municipality-state prosecutions are not protected by the principle of dual sovereignty) "impliedly recognized the continued viability of Bartkus." *Commonwealth v. Mills*, 447 Pa. 163, 168, 286 A.2d 638, 640 (1971).

record in the instant case fails to manifest that the interests of Pennsylvania were not fully protected by the initial prosecution in the federal courts ...." *Commonwealth v. Mills*, supra at 172, 286 A.2d at 642.

We have repeatedly emphasized in this opinion when citing *Commonwealth v. Mills*, supra, that it involved successive prosecutions for the same offense and involved a situation where the state prosecution followed a conviction on the federal indictment. Instantly, we confront neither a situation involving successive prosecutions for the same offense, nor a situation where the federal prosecution resulted in a conviction.

The underpinnings of the "interest analysis" rule enunciated in *Commonwealth v. Mills*, supra, are three. First, the Court, focusing on protecting the interest of the individual, found that "placing an individual in a state prison after he had been incarcerated in a federal prison for the *same offense* is not in any way going to aid in his reformation and rehabilitation." *Commonwealth v. Mills*, supra at 171, 286 A.2d at 641 (emphasis added). Instantly, the appellees were acquitted of the federal charges, thus, we do not confront a situation where "liberty is taken away twice for the same offense." *Commonwealth v. Mills*, supra at 170, 286 A.2d at 641.[24]

The second and third underpinnings of the holding in *Commonwealth v. Mills*, supra, were framed as follows:

"There are other valid considerations which militate against permitting the *second prosecution and punishment for the same offense:* (1) It is in

---

24. We note that this distinction alone would not be sufficient to reject the application of the interest analysis test of *Commonwealth v. Mills*, 447 Pa. 163, 286 A.2d 638 (1971). The interests of the Commonwealth may be sufficiently protected even in a case where the defendant was acquitted on the federal indictment. However, this distinction, coupled with the analysis which follows in the text, and the continuing vitality of *Bartkus v. Illinois*, 359 U.S. 121 (1959) is sufficiently persuasive that *Commonwealth v. Mills*, supra, does not control the issues before us.

derogation of the principle that 'no one should be twice vexed for the one and the *same cause';* and (2) It destroys finality from the individual's standpoint and permits the governments with all their resources and power to make repeated attempts to convict, thus subjecting the accused to live in a continuous state of anxiety, insecurity and possible harassment." *Commonwealth v. Mills,* supra at 171, 286 A.2d at 641-642 (emphasis added).

Again we emphasize that these considerations relate to "second prosecution and punishment for the same offense." Where, as in the instant case, an individual has allegedly committed two separate offenses against the "peace and dignity," *United States v. Lanza,* supra, of two sovereigns, we do not believe that an individual can be heard to argue that he is "twice vexed" or subject to a "continuous state of anxiety, insecurity and possible harassment" when there are two separate prosecutions for separate crimes. Arson and mail fraud are two independent criminal acts, each of which involves different elements of proof and separate volitional conduct on the part of a defendant.

The rationale of *Commonwealth v. Mills,* supra, is thus inapposite to the case at bar in light of the continuing vitality of the principle of *Bartkus v. Illinois,* supra, the fact that we are not confronted with successive deprivations of liberty, and the fact that there are two independent criminal episodes offending different aspects of the "peace and dignity" of two separate sovereigns.[25]

---

25. We do not read *Commonwealth v. Mills,* 447 Pa. 163, 286 A.2d 638 (1971), to require an "interest analysis" approach to cases involving separate prosecutions by separate sovereigns for *different offenses.* Where the offenses are dissimilar, the interests of the Commonwealth and of the United States are difficult to equate. In so holding, we are mindful of the difficulties involved in applying the interest analysis test where the offenses *are* the same. Mr. JUSTICE POMEROY, in his Concurring Opinion in *Commonwealth v. Mills,* supra, noted this

## III

### *Ashe v. Swenson, 397 U.S. 436 (1970)*

In *Ashe v. Swenson*, 397 U.S. 436 (1970) the United States Supreme Court applied the rule of collateral estoppel [26] in the following context. The petitioner was charged with robbing one of six participants in a poker game. The jury found the petitioner " 'not guilty due to insufficient evidence.' " *Id.* at 439. Six weeks later the petitioner was brought to trial again, this time for the robbery of another participant in the poker game. The Court noted that "[t]he witnesses were for the most part the same, though this time their testimony was substantially stronger on the issue of the petitioner's identity." *Id.* at 439-40. The Court held that the rule of collateral estoppel is embodied in the Fifth Amendment guarantee

---

difficulty, observing that: "I do not minimize the difficulties in articulating the standards by which prosecuting attorneys and trial judges should be governed in determining when a second prosecution will be instituted or permitted .... While the interest analysis approach recommended in the court's opinion has merit in the abstract, it will, I fear, prove difficult in application. I think more specific guidelines should be established, if not by statute, then by judicial decision." *Commonwealth v. Mills*, supra at 173, 286 A.2d at 642-43 (POMEROY, J., Concurring). Mr. JUSTICE POMEROY went on to note that the necessary guidelines are embodied in section 111 of the Crimes Code, which was then pending in the General Assembly. As we have noted, section 111 is applicable "[w]hen conduct constitutes an offense within the concurrent jurisdiction of this Commonwealth and of the United States ...." *Commonwealth v. Mills*, supra involving federal and state prosecutions for bank robbery, was such a case.

Where the offenses are not the same and the conduct does not constitute an offense "within the concurrent jurisdiction of this Commonwealth and of the United States ..." the difficulties noted by Mr. JUSTICE POMEROY in applying interest analysis become so accentuated that they overcome its usefulness as a test.

26. The defense of collateral estoppel may be available even when the defense of double jeopardy is not. *See* note 10 supra.

against double jeopardy. *Id.* at 445.[27] Applying the rule of collateral estoppel that "when an issue of ultimate fact has once been determined by a valid and final judgment that issue cannot again be litigated between *the same parties* in any future lawsuit" *Id.* at 443, the Court concluded that the second prosecution was "wholly impermissible" *Id.* at 445, since once "a jury determined by its verdict that the petitioner was not one of the robbers, the State [could not] constitutionally hale him before a new jury to litigate that issue again." *Id.* at 446.

*Ashe v. Swenson,* supra, applied the rule of collateral estoppel to successive prosecutions by the *same sovereign.* This Court has applied the holding in *Ashe v. Swenson,* supra, in *Commonwealth v. Dooley,* 225 Pa. Superior Ct. 454, 310 A.2d 690 (1973), and *Commonwealth v. DeVaughn,* 221 Pa. Superior Ct. 410, 292 A.2d 444, *allocatur refused,* 210 Pa. Superior Ct. *xliv* (1972). Both cases involved successive criminal prosecutions by the *same* sovereign.

It is axiomatic that the doctrine of collateral estoppel requires that the party to be estopped, herein the Commonwealth, be the same party or privy "against whom the prior final judgment was entered." *Thompson v. Karastan Rug Mills,* 228 Pa. Superior Ct. 260, 323 A.2d 341 (1974). Hence, the lack of identity between the Commonwealth and the federal government precludes estoppel in this case.[28] The essence of the doctrine of

___

27. And the Fifth Amendment proscription against double jeopardy is applicable to the states through the Fourteenth Amendment. *See* note 5 supra.

28. We note that the Court in *Commonwealth v. Mills,* 447 Pa. 163, 286 A.2d 638 (1971) in discussing the continuing vitality of *Bartkus v. Illinois,* 359 U.S. 121 (1959) states: " '[I]n the case of successive prosecutions, in accordance with the basic assumption of the dual sovereignties doctrine, the prosecuting jurisdiction may be *acting independently of the other.*' 80 Harvard L. Rev. supra at 1548 [Note, Double Prosecution by State and Federal Governments; Another Exercise in Federalism, 80 Harv. L. Rev. 1538 (1967)]." *Id.* at 168, 286

collateral estoppel is a well recognized equitable reaction against allowing a party to relitigate issues which have already been decided against him, after he has had his day in court. The Commonwealth simply has not had its day in court on the state crime of arson and cannot be estopped.[29]

---

A.2d at 640 (emphasis added). Instantly, the lower court in its opinion observes that there was significant investigative collaboration between the federal and state sovereigns. We are not persuaded that this collaboration undermines the essential independence of the sovereignties insofar as each sovereign independently controls the prosecution of cases involving two distinct offenses.

29. 18 Pa.C.S. §111(2) (1973), see note 12 supra, does change the rule that the party to be estopped be the "same party or privy" to the prior litigation at least insofar as "conduct constitutes an offense within the concurrent jurisdiction of this Commonwealth and of the United States ...." This section, effective June 6, 1973, does not apply to the alleged arson offense of March 1, 1969. However, because we hold that the Commonwealth is not estopped in the instant case since it was not the "same party or privy" to the federal prosecution and our Legislature has dispensed with this "identity" requirement in section 111(2) an observation is necessary. The Legislative *limitation* on the collateral estoppel test embodied in section 111(2), denies the Commonwealth its "day in court," *only* when "conduct constitutes an offense within the concurrent jurisdiction of this Commonwealth and of the United States ...." The instant appeal *does not* involve conduct constituting an offense within the concurrent jurisdiction of this Commonwealth and of the United States.

Moreover, the difficulty of applying a collateral estoppel test in cases involving conduct which does not constitute an offense within the "concurrent jurisdiction" of this Commonwealth and of the United States is highlighted in the instant case by reference to the charge to the jury in the federal prosecution for mail fraud. The charge, in pertinent part as set out in the Brief for Appellant at 4-6, wherein the court specifically excluded the separate Pennsylvania crime of arson from the jury's consideration, was as follows:

" 'The jury should recount that we are not trying in this Court a case of *arson* or *deliberate burning or the like. The essential element here, the crime about which the conspiracy is involved, is a scheme to defraud in which the mails were used to advance the purpose of the scheme.*

" '*Again, while the most dramatic event in the scheme may be*

The application of *Ashe v. Swenson,* supra, to successive prosecutions by *different sovereigns* is an issue of first impression in this Commonwealth. However, our research on this issue has revealed that courts of other jurisdictions, when faced with this issue, have rejected the application[30] of the collateral estoppel test articulated in *Ashe v. Swenson,* supra.

In *United States v. Smith,* 446 F.2d 200 (4th Cir. 1971), a case where the federal prosecution followed the state prosecution, the Court stated: "The doctrine of

---

*the arson and that in itself is a separate crime over which the State has cognizance, we are not here trying the crime of arson or who set the fire or how it was set or the like...*

" 'Now, this is the gist of what the government charges in Count 1 of the indictment, that the defendants Studebaker, Klein, Luick and Grazier devised or intended to devise a scheme or artifice to defraud or attempt to defraud certain insurance companies out of money by means of false and fraudulent representations as to the origin and cause of the fire and that for the purpose of doing that, they placed or caused to be placed-that is, any member of the conspiracy-in an authorized depository for mail matters letters intended to be sent or delivered by the Postal Service of the United States as charged, and third, that in so using the United States mails wilfully and with specific intent and purpose of executing and carrying out the scheme, the offense against the United States-which is the object of the conspiracy-is carried out.'*

" '....' " (Emphasis added.)

30.  Prior to the holding in *Ashe v. Swenson,* 397 U.S. 436 (1970) the Court of Appeals of New York, in *People v. Lo Cicero,* 14 N.Y.2d 374, 200 N.E.2d 622, 251 N.Y.S.2d 953 (1964) considered this issue in the context of a case where the appellant had been acquitted of the federal crime of obstructing by robbery ("hijacking" of a truck) the movement of goods in interstate commerce. Subsequent to the federal acquittal, the appellant went to trial on a state indictment of kidnapping the driver of the truck. The Court held that "[t]he last count, charging the kidnapping of the driver of the hijacked truck, does not place appellant twice in jeopardy because the Federal prosecution did not include that separate offense.... Since the State of New York was not a party to the Federal prosecution and had no control of that case, collateral estoppel may not be urged against it." *People v. Lo Cicero,* supra at 379-80, 200 N.E.2d at 625, 251 N.Y.S.2d at 957.

collateral estoppel is indeed applicable in criminal cases Ashe v. Swenson, 397 U.S. 436, 90 S. Ct. 1189, 25 L.Ed.2d 469 (1970); Sealfon v. United States, 332 U.S. 575, 68 S. Ct. 237, 92 L.Ed. 180 (1948), but it is fundamental that the party estopped from relitigating issues must have been a party to the initial litigation. Serio v. United States, 203 F.2d 576 (5th Cir. 1953). The federal government is neither the same as nor in privity with the State of Virginia and therefore is not barred from relitigating facts resolved in defendant's favor in the former prosecution." *Id.* at 202 (citations omitted). *See also United States v. Sifuentes,* 504 F.2d 845 (4th Cir. 1974) (lack of identity between state and federal governments precludes estoppel); *United States v. Fernandez,* 497 F.2d 730 (9th Cir.), *cert. denied,* 420 U.S. 990 (1974) ("Because the state and federal governments, being separate sovereigns, are not the same party, Ashe does not undermine Abbate and Bartkus." *United States v. Fernandez,* supra at 747, n.10 (HUFSTEDLER, J., Specially Concurring)); *People v. Cooper,* 58 Mich. App. 284, 227 N.W.2d 319 (1975) (the rule of collateral estoppel does not apply since successive federal and state prosecutions do not involve the same parties or their privies (dictum) ).

In *United States v. Feinberg,* 383 F.2d 60 (2d Cir. 1967) the United States Court of Appeals for the Second Circuit stated in language which is also in accord with our present holding on the non-applicability of *Commonwealth v. Mills,* supra, to the instant case:

"While the doctrine of collateral estoppel is indeed applicable to criminal cases, Sealfon v. United States, 332 U.S. 575, 578, 68 S. Ct. 237, 92 L.Ed 180 (1948) the party estopped from relitigating the same issues must have been a party to the initial litigation. Serio v. United States, 203 F.2d 576, 578 (5th Cir. 1953); United States v. Wapnick, 198 F.Supp. 359, 360 (E.D.N.Y. 1961), aff'd per curiam, 315 F.2d 96 (2 Cir. 1963), cert. denied, 374 U.S. 829, 83 S. Ct. 1868

(1965); United States v. Kramer, supra 289 F.2d at 913. *There is insufficient identity of interest between the state and federal governments in prosecuting intrastate and interstate offenses,* respectively, United States v. Sutton, 245 F.Supp. 357, 359-360 (D.Md. 1965) ...." *Id.* at 71 (emphasis added).

In summary, section 111 of the Crimes Code does not apply; *Commonwealth v. Mills,* supra, does not mandate the application of an "interest analysis" test; and the Commonwealth cannot be denied its "day in court" on the alleged arson offense.

Accordingly, the order of the court below quashing the arson indictments is reversed and the indictments reinstated.