394 A.2d 998

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Joseph P. MASCARO, Jr., Appellant.**

Superior Court of Pennsylvania.

Argued June 19, 1978.

Decided Nov. 22, 1978.

Abraham A. Hobson, III, King of Prussia, for appellant.

D. Michael Emuryan, Assistant District Attorney, Media, with him Richard R. Galli, Assistant United States Attorney, Philadelphia, for Commonwealth, appellee.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

HESTER, Judge:

Presently before the court is the appeal of Joseph P. Mascaro, Jr. (Mascaro) from the judgment of sentence entered December 7, 1977.

The facts may briefly be summarized as follows: On December 13, 1976, appellant was charged in a state criminal complaint with (a) five counts (diverse dates) of theft by deception, 18 Pa.C.S.A. § 3922; (b) five counts (diverse dates) of deceptive business practices, 18 Pa.C.S.A. § 4107; (c) one count of unsworn falsification to authorities, 18 Pa.C.S.A. § 4904; and (d) one count of criminal conspiracy, 18 Pa.C.S.A. § 903, respectively.

Thereafter, on February 11, 1977, appellant was indicted by a federal grand jury and charged with four counts of

mail fraud (18 U.S.C. § 1341) and four counts of false statements (18 U.S.C. § 1001).

Both the state and the federal indictments arose "from a common and continuing scheme" wherein the County of Delaware overpaid a corporation (J. P. Mascaro & Sons, Inc.), which was substantially controlled by appellant, the approximate sum of $170,000.00 pursuant to a service contract between said corporation and the County of Delaware, whereby said corporation was to haul residue from Delaware County to a landfill located in New Jersey.

Prior to having been brought to trial on the state charges in Delaware County, appellant entered a plea of guilty in Federal Court on March 14, 1977 to two violations in each of 18 U.S.C. § 1341 and 18 U.S.C. § 1001. Appellant's guilty pleas were accepted and sentencing was set for April 15, 1977.

On March 22, 1977, appellant filed in the state court, a petition to dismiss the state charges alleging "a double jeopardy" defense.

In April, 1977, appellant was sentenced in federal court to pay a fine of $4,500.00 and to probation for five years on the condition that he personally guarantee the corporate restitution ordered to Delaware County of the overpayments received. Thereafter, the federal government moved that the third and fourth counts of the mail fraud and false statements indictments be dismissed.

On May 20, 1977 (obviously subsequent to the federal sentencing), the Delaware County Court entered an order in response to appellant's March 22, 1977 petition to dismiss, wherein the court dismissed count I *only* of the criminal complaint charging appellant with deceptive business practices (Information No. 7525B of 1976). All other state charges, including counts 2, 3, 4 and 5 under the Deceptive Business Practice Indictment, were found by the lower court to be not barred from prosecution in the state court.

On May 31, 1977, Commonwealth vs. Joseph P. Mascaro, Jr. was called for non-jury trial, at which time the Common-

wealth and appellant entered into a written stipulation to all material facts. On June 3, 1977, the lower court entered an order adjudicating appellant guilty on all counts.

On June 10, 1977, appellant timely filed a motion for a new trial and in arrest of judgment, which motion alleged, *inter alia*, that the Commonwealth's prosecution violated both federal and state constitutional proscriptions against "double jeopardy."

Appellant's motion was denied by order of court dated November 28, 1977. On December 7, 1977, the state court sentenced appellant. Thereafter, this appeal.

In its opinion, the lower court concluded that although all federal and state charges arose from "a common and continuing scheme," that fact alone did not bar the Commonwealth's prosecution for individual occurrences not specifically prosecuted and hence not specifically resolved in the federal prosecution.

Although the lower court ultimately concluded that the federal conviction was *not* a bar to the Commonwealth's prosecution[1] pursuant to the constitutional proscription against "double jeopardy," the lower court opined:

These Federal charges arose out of the Defendant's activities pursuant to the same contract mentioned above between J. P. Mascaro & Sons, Inc. and the County of Delaware. (p. 2)

And, again:

Although the Federal mail fraud allegations deal with the same deceptive scheme to defraud the County of Delaware by the submission of false records, it is neither identical nor comparable to the State offense of theft by deception. (p. 14)

And, finally:

Although all charges against the Defendant, both Federal and State, arise from a common and continuing scheme,

---

1. Except for Count I of the State information charging Deceptive Business Practice on March 31, 1976, which date coincided with one of the dates contained in Count IV in the Federal indictment. Accordingly, Count I only of the State information was dismissed.

this fact does not, we feel, bar State action against him for those specific occurrences not covered in the resolution of the Federal prosecution. (p. 16)

We do not agree and hence shall enter an order in arrest of judgment and discharge the appellant.

In *Commonwealth v. Mills*, 447 Pa. 163, 286 A.2d 638 (1971),[2] the Pennsylvania Supreme Court set forth the judicial considerations involved in making the federal-state "dual sovereignty" doctrine compatible with the "double jeopardy" clause:

. . . we are really involved in a balancing process, whereby we place the interests of the two sovereigns on one side of the judicial scale, and on the other side we place the interest of the individual to be free from twice being prosecuted and punished for the same offense. (pp. 640–641)

Continuing, the *Mills* court further theorized:

There are other valid considerations which militate against permitting the second prosecution and punishment for the same offense: (1) It is in derogation of the principle that "NO ONE SHOULD BE TWICE VEXED FOR THE ONE AND THE SAME CAUSE"; and (2) It destroys finality from the individual's standpoint and permits the governments with all their resources and power to make repeated attempts to convict, thus subjecting the accused to live in a continuous state of anxiety, insecurity and possible harassment. (pp. 641–642)

Based upon the aforementioned, the *Mills* court ruled:

. . . that henceforth in Pennsylvania, a second prosecution and imposition of punishment for the same offense will not be permitted unless it appears from the record that the interests of the Commonwealth of Penn-

2. Mills was indicted by the Commonwealth for violations of the state's Criminal Code; specifically, carrying a concealed, deadly weapon, unlawfully carrying a firearm without a license, and aggravated robbery. He was indicted by the United States Government for bank robbery and assault.

Mills pled guilty to the federal indictment and was sentenced to a term of five years imprisonment.

sylvania and the jurisdiction which initially prosecuted and imposed punishment are substantially different. In other words, if it appears that the interests of this Commonwealth were not sufficiently protected in the initial prosecution, then a second prosecution and imposition of additional punishment in Pennsylvania will be allowed. (p. 642)

The court in *Mills* subsequently concluded that "since the record in the instant case *fails* to manifest that the interests of Pennsylvania *were not fully protected* by the initial prosecution in the federal courts, the convictions and punishment imposed [in the state court] cannot stand." (p. 642) (Emphases added)

Thus was born the "interest analysis" test in Pennsylvania which was embodied in statute two years later.

§ 111. When prosecution barred by former prosecution in another jurisdiction.

When conduct constitutes *an offense* within the concurrent jurisdiction of this Commonwealth and of the United States or another state, a prosecution in any such other jurisdiction is a bar to a subsequent prosecution in this Commonwealth under the following circumstances:

(1) The first prosecution resulted in an acquittal or in a conviction as defined in section 109 of this title (relating to when prosecution barred by former prosecution for same offense) *and the subsequent prosecution is based on the same conduct unless* :

(i) the offense of which the defendant was formerly convicted or acquitted and the offense for which he is subsequently prosecuted each requires proof of a fact not required by the other and the law defining each of such offenses is intended to prevent a substantially different harm or evil; or (Emphasis added)

(ii) n/a

Act of December 6, 1972, P.L. 1482, No. 334, § 1, eff. June 6, 1973. 18 Pa.C.S.A. § 111.

This court in *Commonwealth v. Studebaker*, 240 Pa.Super. 37, 362 A.2d 336 (1976), was faced with determining whether

the "interest analysis" test and/or the principle of "double jeopardy" barred a Commonwealth prosecution for arson[3] following acquittal of federal charges of mail fraud, which were based on a scheme to defraud fire insurers in connection with the alleged arson of a hotel.

Following a detailed discussion of the rationale or the underpinnings of the interest analysis test enunciated in *Mills*, supra, this court, in *Studebaker*, found same to be inapplicable for:

> "Instantly, we confront neither a situation involving successive prosecutions for the same offense, nor a situation where the federal prosecution resulted in a conviction." (p. 344)

> "Where . . . an individual has allegedly committed two separate offenses against the 'peace and dignity,' (citations omitted) of two sovereigns, we do not believe that an individual can be heard to argue that he is 'twice vexed' or subject to a 'continuous state of anxiety, insecurity and possible harassment' when there are two separate prosecutions for separate crimes. Arson and mail fraud are two independent criminal acts, each of which involves different elements of proof and separate volitional conduct on the part of a defendant." (pp. 344–345)

In the instant case, the Commonwealth has adopted a similar position—that appellant has committed separate offenses against the "peace and dignity" of two sovereigns.

Very recently, however, the Pennsylvania Supreme Court has reversed our opinion in *Studebaker*, supra, and in an opinion filed October 5, 1978,[4] concluded:

> "We believe, however, that the acquittal in Federal Court does bar the state prosecution when both prosecutions are based on substantially the same evidence. We are thus compelled to reverse the Superior Court . . . ." (p. 336)

---

3. Act of June 24, 1939, P.L. 872 § 905, 18 P.S. § 4905.

4. *Commonwealth v. Grazier and Commonwealth v. Studebaker*, 481 Pa. 622, 393 A.2d 335.

In reversing *Studebaker*, supra, the Supreme Court found that the *Mills* interest analysis test was applicable despite the fact that *Studebaker* involved successive trials for different offenses, i. e., mail fraud and arson:

Again, we find the Commonwealth's attempted distinction to be one of form over substance.

In terms of the *Mills* analysis, a second trial will not be permitted if the interests of the Commonwealth are sufficiently protected at the federal trial . . . Instantly, both the federal government and the Commonwealth's principal interest is against the crime of arson. While federal mail fraud is a different crime from arson, both statutes as used in this case protect the same government interest. Under these facts, *Mills* will act as a bar to a state prosecution for arson following an acquittal in federal court for mail fraud in connection with a scheme to commit arson. (pp. 339–340)

We find that a proper application of the *Mills* "interest analysis" test and Section 111 of the Crimes Code coupled with the Supreme Court's recent opinion in *Studebaker* (supra), bars appellant's prosecution in the instant case on all State charges which have arisen from the "common and continuing scheme"—that scheme being to defraud the County of Delaware by the submission of false records. To hold otherwise would be to apply the "interest analysis" test and § 111 in such a narrow and limiting manner so that dual prosecutions would effectively be barred *only* where exact crimes match exact dates—crime for crime and date for date.

The Federal Mail Fraud (18 U.S.C.A. § 1341) and False Statement (18 U.S.C.A. § 1001) statutes are designed to guard against theft and fraud. So too are the state statutes—Theft by Deception (18 Pa.C.S.A. § 3922), Deceptive Business Practices (18 Pa.C.S.A. § 4107), and Unsworn Falsifications to Authorities (18 Pa.C.S.A. § 4904). Similarly, the inchoate crime of Criminal Conspiracy (18 Pa.C.S.A. § 903) is an offense of the same grade and degree as the most serious of its criminal objectives—here, theft and fraud. The state

and federal statutes employed here are designed to protect a similar governmental interest; contrariwise would be "form over substance."

Moreover, in applying the "interest analysis" rule, we conclude that the interests of both sovereigns are fully protected. On Count I of the federal indictment, appellant was sentenced to pay a fine of $4,500.00 and to probation for five years on the condition that he personally guarantee the obligations of J. P. Mascaro & Sons, Inc. to make complete restitution to the County of Delaware of the overpayments received.

We find that the Commonwealth has failed to sustain its burden of proving both that the federal charges, to which a guilty plea was entered and accepted, failed to adequately protected its interests, *and* that the federal conviction was based on substantially different evidence than was required to convict in the state court.

Under the facts of the instant case, we conclude the Commonwealth's prosecution must be barred.

Motion in arrest of judgment is granted and appellant discharged.

HOFFMAN, J., did not participate in the consideration or decision of this case.